[No. H032372. Sixth Dist. Nov. 23, 2009.]

LAURI COHEN BADER, Plaintiff and Appellant, v.
FRED D. ANDERSON et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts IV., V., VII., and VIII. of the Discussion.

776

779

## Counsel

Law offices of Jeffrey M. Forster, Jeffrey M. Forster; Ballon Stoll Bader & Nadler and Irving Bizar for Plaintiff and Appellant.

Fenwick & West, Dean S. Kristy, Kevin P. Muck and Jennifer C. Bretan for Defendants and Respondents.

## OPINION

**DUFFY, J.**—Management of a corporation, including decisions concerning the prosecution of actions, is vested in its board of directors. When the board refuses to enforce corporate claims, however, the shareholder derivative suit provides a limited exception to the rule that the corporation is the proper party plaintiff. In deference to the managerial role of directors and in order to curb potential abuse, the shareholder asserting a derivative claim must make a threshold showing that he or she made a presuit demand on the board to take the desired action. This demand requirement was recognized over 120 years ago by the Supreme Court (see *Hawes v. Oakland* (1881) 104 U.S. 450 [26 L.Ed. 827]), and is codified in California (see Corp. Code, § 800, subd. (b)(2); hereafter, section 800(b)(2)).[1] Under section 800(b)(2), a plaintiff must plead "with particularity" the attempts that were made to secure board action before bringing suit, or, alternatively, the factual basis upon which the plaintiff believes that a demand on the board was unnecessary, i.e., that a demand would have been futile. Difficulties often arise in shareholder derivative suits in resolving whether the plaintiff has alleged sufficient facts supporting demand futility, thereby obviating the need for a prior demand on the board and the concomitant opportunity for the directors to decide whether to pursue litigation on the corporation's behalf. Another issue that often presents itself is whether a shareholder who brings suit alleging an individual wrong (or direct action) is in fact asserting a derivative claim for which a demand on the board is required. Both of these issues are present in the case before us.

Plaintiff Lauri Cohen Bader filed a shareholder derivative suit in May 2005 against Apple, Inc., and its directors and officers. She challenged a cash performance bonus plan for nondirectors (Plan) that was approved by Apple shareholders after the dissemination of a March 2005 proxy statement (Proxy Statement, or Statement) that she claimed was misleading. In her amended complaint, she alleged that she was pursuing both derivative claims and individual (or direct) claims. After the sustaining of three successive demurrers, and after the case had been pending for more than two years, the court sustained without leave to amend a demurrer to the fourth amended complaint (Complaint). The court concluded, among other things, that Bader had failed to adequately plead (1) demand futility, (2) that the Proxy Statement was false or misleading, or (3) facts sufficient to constitute a direct cause of action.

Bader argues that she adequately pleaded both derivative and direct claims. She asserts further that the court erred because the demand futility doctrine is inapplicable to claims based upon materially false and misleading proxy

---

[1] All further statutory references are to the Corporations Code unless otherwise specified.

statements. Bader also contends that she adequately pleaded facts demonstrating that the Proxy Statement contained material misstatements and omissions.

In the published portion of this opinion, we conclude that Bader lacked standing to assert derivative claims on behalf of Apple because of her failure to make a presuit demand on the board and her failure to allege that the making of such a demand would have been futile. In so holding, we reject Bader's position that the requirement of specific pleading of a demand (or, in the alternative, demand futility) under section 800(b)(2) is inapplicable to derivative suits based upon alleged misrepresentations in proxy statements. We also hold in the published portion of this opinion that the claims Bader purported to assert in the Complaint as direct claims on behalf of herself and all similarly situated shareholders are not maintainable, because the gravamen of those claims is corporate in nature and may therefore be asserted only by the corporation. In the unpublished portions of this opinion, we (1) reject Bader's derivative claim based on the contention that the Plan's adoption was invalid; (2) conclude that the allegations of the Complaint were insufficient to support a derivative claim based upon an allegedly false or misleading Proxy Statement; (3) dispose of Bader's remaining contentions by holding that they have been forfeited; and (4) find that the court did not abuse its discretion by denying Bader leave to amend where she failed to identify in what manner the Complaint could be amended to state a viable claim. Accordingly, we will affirm the judgment of dismissal.

## PROCEDURAL BACKGROUND

### I. *Superseded Pleadings*

On May 19, 2005, Bader filed a shareholder derivative complaint alleging three causes of action, naming Apple, seven individuals alleged to be members of its board of directors, and nine individuals alleged to be executive officers and Plan participants.[2] Prior to defendants' filing an answer, Bader filed an amended complaint alleging three causes of action. Bader asserted both direct and derivative claims challenging the adoption of the Plan, claiming that the Proxy Statement soliciting the shareholder vote was false and misleading. Defendants filed a demurrer, which was sustained by the court with leave to amend.

---

[2] The seven persons identified as directors were Fred D. Anderson, William V. Campbell, Millard S. Drexler, Albert A. Gore, Jr., Steven P. Jobs, Arthur Levinson, and Jerome B. York (collectively, Apple directors). The nine people identified as executive officers and Plan participants were Timothy D. Cook, Nancy R. Heine, Ronald B. Johnson, Peter Oppenheimer, Jonathan Rubinstein, Philip W. Shiller, Bertrand Serlet, Ph.D., Sina Tamaddon, and Avadis Tevanian, Jr., Ph.D. (collectively, Apple officers). Hereafter, Apple, the Apple directors, and the Apple officers are sometimes referred to collectively as defendants.

In Bader's second amended complaint, she again alleged both direct and derivative claims in three causes of action. The court sustained defendants' demurrer with leave to amend as to Apple and the Apple directors. The court concluded, inter alia, that the claims alleged were derivative, not direct; Bader had failed to plead facts sufficient to establish demand futility required for a derivative action; and Bader had failed to allege sufficient facts that the Proxy Statement was false or misleading. The court also sustained the demurrer without leave to amend as to the Apple officers.

Bader filed a third amended complaint, alleging that she was asserting both a "stockholder's direct or class action" as well as a derivative action. She alleged five causes of action. Apple and the Apple directors again demurred; the court sustained the demurrer with leave to amend. The court concluded, inter alia, that Bader had failed to allege sufficient facts that the Proxy Statement was false or misleading to support her direct shareholder claim; even if such allegations had been sufficient, Bader could not assert a direct claim because the primary alleged injury was to Apple; the class action allegations were insufficient; and Bader had again failed to plead facts sufficient to establish demand futility required for a derivative action. The court also allowed Bader to conduct limited discovery on the issue of demand futility.

## II. *Fourth Amended Complaint*

On April 30, 2007, Bader filed a fourth amended complaint. In it, she alleged six causes of action, namely, for (1) a declaration that the Plan was void because it was not adopted in accordance with California law; (2) a declaration that the Plan was void because there were material misstatements and omissions in the Proxy Statement; (3) breach of fiduciary duty; (4) unfair and unlawful business practices in violation of Business and Professions Code section 17200; (5) violations of the express terms of the Plan; and (6) waste.

Bader alleged[3] that she had been an Apple shareholder continuously since October 10, 2000. She brought the action "for the benefit of [Apple] to redress injuries suffered and to be suffered by [Apple] as a result of [the conduct of] . . . the individual defendants." Bader did not make a prior demand on the board in accordance with section 800(b)(2). She claimed that her suit did not concern a management decision and therefore the business judgment rule did not apply. Bader alleged that because the demand requirement is an extension of the business judgment rule, she was not required to make a presuit demand. Demand was, in any event, not required because "[t]he entire board [was] neither [disinterested] nor independent . . . ."

---

[3] We will sometimes refer to the allegations in the Complaint in this paragraph and in the succeeding four paragraphs without the prefatory "Bader alleged," in order to avoid undue repetition of the phrase.

In the first cause of action claiming that the Plan was invalidly adopted, Bader alleged that the board had appointed a compensation committee (Committee) consisting of three persons (Campbell, Drexler, and Gore), and that the Committee "authorized and enacted the Plan" ultimately approved by the shareholders. The board itself never approved the Plan, an omission that rendered its purported adoption invalid pursuant to section 311.

The second cause of action (captioned "Material Misstatements and Omissions in Proxy Statement") extensively referred to and quoted from the Statement over the course of 16 pages of text. The board authorized the distribution of the Proxy Statement to shareholders for the purpose of, inter alia, approval of the Plan at the annual shareholders meeting scheduled for April 21, 2005. Each of the defendants "knew or should have known that the Proxy Statement contained materially false or misleading representations and omissions . . . ." The Complaint alleged that the Statement falsely represented that bonus payments made under the Plan, if the Plan were approved, would qualify as "performance-based" compensation that would be deductible as provided in section 162, subdivision (m) of the Internal Revenue Code, title 26 United States Code section 162(m). Bader alleged further that the Statement's use of the term "operating margin" was false or misleading; the term was vague and nonobjective, and was not a performance goal stated in the Plan. The Proxy Statement was also "false or misleading" in that it stated that the Committee would make an adjustment in evaluating performance under a performance criterion by excluding " 'extraordinary non-recurring items' [a phrase that] is not an accounting expression."

It was also alleged in the second cause of action that the Proxy Statement was false and misleading because it did not disclose the identities and the number of persons who were eligible under the Plan, did not define the term "key employee," and did not disclose the number of such employees that would participate in the Plan. The Proxy Statement represented that the Committee had engaged an outside compensation consultant, who had "concluded that the total cash compensation paid to [Apple's] executive vice president and senior vice presidents was not competitive and falls significantly below market median due to the absence of a cash bonus program." But the Statement did not disclose whether the consultant had reached that conclusion with the benefit of the additional information that Apple had granted restricted stock units (RSU's) to various executive officers in March 2004 "worth millions of dollars."

The third through sixth causes of action incorporated by reference the prior paragraphs of the Complaint. In the third claim, Bader alleged that the Apple directors and Apple officers breached their fiduciary duties owed to the corporation and its shareholders. In the fourth cause of action, Bader alleged

that defendants' conduct constituted unfair and unlawful business acts or practices within the meaning of Business and Professions Code section 17200. In the fifth cause of action (captioned as a claim for "Violations of the Express Terms of the Plan"), she alleged that the board had permitted the use of undefined performance goals, including "operating margin goals," to be used in implementing the Plan for Apple's 2005 and 2006 fiscal years. The sixth cause of action alleged a claim of waste, based upon (1) the making of bonus payments under the Plan; (2) the issuance in 2003 and 2004 of the RSU's to senior officers, because they were structured in a way that the payments were nondeductible by Apple; and (3) the grant in January 2000 to Jobs of options to purchase 20,000,000 of Apple shares, which option grants may have been backdated and therefore nondeductible by Apple.

Apple and the Apple directors again filed a demurrer. The court sustained the demurrer without leave to amend. The court concluded, inter alia, that Bader had again failed to plead facts sufficient to establish that (1) she was excused from making demand on Apple's board of directors before bringing suit; (2) the Proxy Statement was false or misleading; (3) she had a viable direct cause of action; or (4) the Plan was invalid because its manner of adoption did not comply with California law.

A judgment of dismissal was entered in favor of defendants on October 25, 2007. Bader filed a timely notice of appeal. The matter is a proper subject for appellate review. (*Berri v. Superior Court* (1955) 43 Cal.2d 856, 860 [279 P.2d 8]; *Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1695 [40 Cal.Rptr.2d 125].)

## DISCUSSION

### I.  *Standard of Review of Order Sustaining Demurrer*

We perform an independent review of a ruling on a demurrer and decide de novo whether the challenged pleading states facts sufficient to constitute a cause of action. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; see also *Randi W. v. Muroc Joint Unified School Dist.* (1997) 14 Cal.4th 1066, 1075 [60 Cal.Rptr.2d 263, 929 P.2d 582].)

"It is not the ordinary function of a demurrer to test the truth of the plaintiff's allegations or the accuracy with which he describes the defendant's conduct. A demurrer tests only the legal sufficiency of the pleading." (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 213 [197 Cal.Rptr. 783, 673 P.2d 660].) Thus, as noted, in considering the merits of a demurrer, "the facts alleged in the pleading are deemed to be true, however improbable they may be. [Citation.]" (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604 [176 Cal.Rptr. 824]; see also *Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216] [court reviewing propriety of ruling on demurrer is not concerned with the "plaintiff's ability to prove . . . allegations, or the possible difficulty in making such proof"].)

On appeal, we will affirm a "trial court's decision to sustain the demurrer [if it] was correct on any theory. [Citation.]" (*Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 808 [50 Cal.Rptr.2d 736], fn. omitted.) Thus, "we do not review the validity of the trial court's reasoning but only the propriety of the ruling itself. [Citations.]" (*Orange Unified School Dist. v. Rancho Santiago Community College Dist.* (1997) 54 Cal.App.4th 750, 757 [62 Cal.Rptr.2d 778].)

## II.  *Applicable Law*

### A.  *Corporate Governance and Derivative Suits*

It is a fundamental principle of corporate governance that the role of managing the business of the corporation is vested in its board of directors, not in its shareholders. (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108 [72 Cal.Rptr.3d 129, 175 P.3d 1184].) This responsibility includes the prosecution, defense, and control of corporate litigation. (*Ibid.*) Judicial deference is accorded to directors under the "business judgment rule," which recognizes that where decisions are without fraud or breach of trust, "management of the corporation is best left to those to whom it has been entrusted, not to the courts. [Citation.]" (*Desaigoudar v. Meyercord* (2003) 108 Cal.App.4th 173, 183 [133 Cal.Rptr.2d 408].) As codified in section 309, the business judgment rule obligates a director to perform his or her duties "in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders and with such care, including reasonable inquiry, as an

ordinarily prudent person in a like position would use under similar circumstances" (§ 309, subd. (a)); and it insulates a director from liability when he or she performs those obligations in the manner provided in the statute (§ 309, subd. (c)).[4]

■ In light of the directors' role in the operation of the business affairs of the corporation, where conduct, including mismanagement by corporate officers, causes damage to the corporation, it is the entity that must bring suit; the individual shareholder may not bring an action for indirect personal losses (i.e., decrease in stock value) sustained as a result of the overall harm to the entity. (*Anderson v. Derrick* (1934) 220 Cal. 770, 773–774 [32 P.2d 1078]; see also *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 127 [84 Cal.Rptr.2d 753].) A contrary rule "would 'authorize multitudinous litigation and ignore the corporate entity.' [Citation.]" (*Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 312 [25 Cal.Rptr.3d 468] (*Schuster*).) And "[d]irectors have the same discretion with respect to the prosecution of claims on behalf of the corporation as they have in other business matters." (*Findley v. Garrett* (1952) 109 Cal.App.2d 166, 177 [240 P.2d 421] (*Findley*).) Thus, the business judgment rule "protects a board's good faith decision to reject a derivative lawsuit" so long as the majority of the board does not have a personal interest in the lawsuit's outcome. (*Desaigoudar v. Meyercord, supra,* 108 Cal.App.4th at p. 184; see also § 204, subd. (a)(10)(iii).)

■ This principle that the corporation must bring suit on its own behalf notwithstanding, where the directors fail or refuse to act, a shareholder has a sufficient interest in the entity "to justify the bringing of a 'propulsive' action, designed to set in motion the judicial machinery for the redress of the wrong

---

[4] Section 309 reads in full: "(a) A director shall perform the duties of a director, including duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances. [¶] (b) In performing the duties of a director, a director shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by any of the following: [¶] (1) One or more officers or employees of the corporation whom the director believes to be reliable and competent in the matters presented. [¶] (2) Counsel, independent accountants or other persons as to matters which the director believes to be within such person's professional or expert competence. [¶] (3) A committee of the board upon which the director does not serve, as to matters within its designated authority, which committee the director believes to merit confidence, so long as, in any such case, the director acts in good faith, after reasonable inquiry when the need therefor is indicated by the circumstances and without knowledge that would cause such reliance to be unwarranted. [¶] (c) A person who performs the duties of a director in accordance with subdivisions (a) and (b) shall have no liability based upon any alleged failure to discharge the person's obligations as a director. In addition, the liability of a director for monetary damages may be eliminated or limited in a corporation's articles to the extent provided in paragraph (10) of subdivision (a) of Section 204."

to the corporation. [Citations.]" (*Klopstock v. Superior Court* (1941) 17 Cal.2d 13, 16–17 [108 P.2d 906] (*Klopstock*).) "[T]he corporation is the ultimate beneficiary of such a derivative suit . . . ." (*Id.* at p. 21.) A derivative lawsuit is in essence a consolidation in equity of two suits, one by the shareholder against the directors seeking an order that they sue those who have wronged the corporation, and the other by the corporation against the wrongdoers. (*Daily Income Fund, Inc. v. Fox* (1984) 464 U.S. 523, 529, fn. 4 [78 L.Ed.2d 645, 104 S.Ct. 831].) A presuit demand on the directors, however, is ordinarily required for the bringing of a derivative action.

### B.   *Derivative Suits—Demand and Demand Excusal*

■ As a precondition for bringing a derivative action on behalf of the corporation, the shareholder "should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be apparent to the court." (*Hawes v. Oakland, supra,* 104 U.S. at pp. 460–461.) The shareholder must demonstrate to the court "with particularity" the efforts he or she made to induce the directors to take action. (*Id.* at p. 461.) ■ As the Supreme Court later explained, *Hawes* "sought to maintain derivative suits as a limited exception to the usual rule that the proper party to bring a claim on behalf of a corporation is the corporation itself, acting through its directors or the majority of its shareholders. . . . [¶] The principal means by which the Court in *Hawes* sought to vindicate this policy was, of course, its requirement that a shareholder seek action by the corporation itself before bringing a derivative suit. [Citation.] This 'demand requirement' affords the directors an opportunity to exercise their reasonable business judgment and 'waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right. They may regard the expense of enforcing the right or the furtherance of the general business of the corporation in determining whether to waive or insist upon the right.' [Citation.] On the other hand, if, in the view of the directors, 'litigation is appropriate, acceptance of the demand places the resources of the corporation, including its information, personnel, funds, and counsel, behind the suit.' [Citation.]" (*Daily Income Fund, Inc. v. Fox, supra,* 464 U.S. at pp. 531–533, fn. omitted.)

This requirement that a shareholder establish that he or she made a " 'suitable demand, unless excused by extraordinary conditions . . .' [citation]" (*Kamen v. Kemper Financial Services, Inc.* (1991) 500 U.S. 90, 96 [114 L.Ed.2d 152, 111 S.Ct. 1711] (*Kamen*)), " 'is to encourage intracorporate resolution of disputes and to protect the managerial freedom of those to

whom the responsibility of running the business is delegated. . . .' " (*Shields v. Singleton* (1993) 15 Cal.App.4th 1611, 1619 [19 Cal.Rptr.2d 459] (*Shields*).) The demand requirement is also intended to prevent the abuse of the derivative suit remedy. (*Kamen*, at pp. 95–96.) The demand requirement under federal law is embodied in rule 23.1 of the Federal Rules of Civil Procedure (28 U.S.C.). (*Kamen*, at p. 96.) California's demand requirement under section 800(b)(2) is similar to the federal rule and requires that the plaintiff in a shareholder derivative suit "allege[] in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and allege[] further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file."

■ As discussed below, a critical issue is whether Bader adequately pleaded circumstances excusing her from making a demand on Apple's board (i.e., demand futility). "Although 'jurisdictions differ widely in defining the circumstances under which demand on directors will be excused,' [citation], demand typically is deemed futile when a majority of the directors have participated in or approved the alleged wrongdoing, [citation], or are otherwise financially interested in the challenged transactions, [citation]." (*Kamen, supra*, 500 U.S. at pp. 101–102, fn. omitted.) In California, there have been few cases that have attempted to delineate the circumstances constituting demand futility. However, given the requirement under section 800(b)(2) that allegations be made "with particularity," it is clear that general averments that the directors were involved in a conspiracy or aided and abetted the wrongful acts complained of will not suffice to show demand futility. (*Shields, supra*, 15 Cal.App.4th at p. 1621.) Likewise, a general claim that there is nationwide structural bias common to corporate boards will not excuse the making of a demand before bringing a derivative suit. (*Oakland Raiders v. National Football League* (2001) 93 Cal.App.4th 572, 587 [113 Cal.Rptr.2d 255] (*Oakland Raiders I*).) Rather, "the court must be apprised of facts specific to each director from which it can conclude that that particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff." (*Shields*, at p. 1622.) Thus, the court, in reviewing the allegations to support demand futility, must be able to determine on a director-by-director basis whether or not each possesses independence or disinterest such that he or she may fairly evaluate the challenged transaction. (*Oakland Raiders I*, at p. 587.)

■ The test commonly employed in determining the adequacy of the pleading of demand futility was enunciated by the Delaware Supreme Court

in *Aronson v. Lewis* (Del. 1984) 473 A.2d 805 (*Aronson*).[5] The court there observed that "the entire question of demand futility is inextricably bound to issues of business judgment and the standards of that doctrine's applicability." (*Aronson*, at p. 812.) *Aronson* held that a court, in deciding whether a plaintiff will be excused from making a demand on the board, must evaluate "whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." (*Id.* at p. 814; see also *Oakland Raiders I, supra*, 93 Cal.App.4th at p. 587 [describing *Aronson* test].) "[F]utility is gauged by the circumstances existing at the commencement of a derivative suit." (*Aronson, supra*, at p. 810.) And the two-prong test under *Aronson* is disjunctive; accordingly, there is demand excusal if either prong is satisfied. (*Brehm v. Eisner* (Del. 2000) 746 A.2d 244, 256.)[6]

■ The Delaware Supreme Court later clarified in *Rales v. Blasband* (Del. 1993) 634 A.2d 927, 933 (*Rales*), that the *Aronson* test could not be applied mechanically to all derivative suits in which no prior demand is made. Instead, although the *Aronson* two-prong standard is well suited to actions challenging conscious decisions by boards to act or refrain from acting, the business judgment rule (and hence the test in *Aronson*) could not be applied where there was no board action, such as where (1) the business decision complained of was made by the board, the majority of whose members were no longer part of the directorate when the suit was filed; (2) the matter complained of was not a board business decision; or (3) the challenged decision was made by the board of a different corporation. (*Rales*, at pp. 933–934.) In those instances, the court inquires "whether the board that would be addressing the demand can impartially consider its merits without being influenced by improper considerations. Thus, a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint

[5] Bader and defendants both cite Delaware authority in support of their respective positions. Apple is a corporation organized under the laws of California. Accordingly, there is little to suggest that the law of Delaware controls our decision here. (Cf. *Schuster, supra*, 127 Cal.App.4th at pp. 312, 318 [concluding that, applying either California or Delaware law, claim was derivative one brought on behalf of Delaware corporation for which the plaintiffs lacked standing to sue].) However, since Delaware corporate law is not inconsistent with California law relevant here, we find instructive certain cases decided in Delaware described in this opinion on the subjects of shareholder derivative suits and demand futility. (See *Oakland Raiders I, supra*, 93 Cal.App.4th at p. 586, fn. 5.)

[6] But see Facter, *Fashioning a Coherent Demand Rule for Derivative Litigation in California* (2000) 40 Santa Clara L.Rev. 379 (urging stricter demand futility pleading rule with view that second *Aronson* prong is too impractical to apply and leads to dilution of demand requirement).

is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." (*Id.* at p. 934.)

■ A director will be deemed not to be disinterested if the facts alleged "demonstrat[e] a potential personal benefit or detriment to the director as a result of the decision." (*Beam v. Stewart* (Del. 2004) 845 A.2d 1040, 1049, fn. omitted (*Beam*); see also *Rales, supra*, 634 A.2d at p. 936.) The personal benefit must arise out of the transaction being challenged. (*Rales, supra*, 634 A.2d at p. 933.) Such a showing that a director may not be disinterested is not made through general allegations that he or she sold stock in the company while in possession of material, nonpublic information. (*In re VeriSign, Inc., Derivative Litig.* (N.D.Cal. 2007) 531 F.Supp.2d 1173, 1190–1191.) But where there is a showing that a director is not disinterested, and the transaction has not been approved by a majority of directors, the business judgment rule does not come into play; demand futility is established. (*Aronson, supra*, 473 A.2d at pp. 812, 815.)

■ The derivative plaintiff seeking to excuse demand based upon a director's lack of independence must allege specific facts that cast doubt as to "whether the director's decision is based on the corporate merits of the subject before the board, rather than extraneous considerations or influences." (*Beam, supra*, 845 A.2d at p. 1049, fn. omitted.) Such lack of independence may be demonstrated by specific facts "showing that the director is 'beholden' to an interested director or officer, 'or so under their influence that their discretion would be sterilized.' [Citation.]" (*In re IAC/InterActiveCorp Securities Litigation* (S.D.N.Y. 2007) 478 F.Supp.2d 574, 599, quoting *Rales, supra*, 634 A.2d at p. 936.) Where the claim is that specified directors lack independence because they are dominated by a controlling shareholder, the general allegation that the controlling shareholder " 'personally selected' " the directors is insufficient. (*Aronson, supra*, 473 A.2d at p. 815.) Rather, in addition to alleging control, the plaintiff is required to present specific facts showing "that through personal or other relationships the directors are beholden to the controlling person. [Citation.]" (*Ibid.*; see also *Beam, supra*, at p. 1052 [allegations must show relationship was so substantial that "noninterested director would be more willing to risk his or her reputation than risk the relationship with the interested director" (fn. omitted)].) And in this context, simple allegations, of themselves, that a director has a personal friendship or outside business relationship with the controlling person will not suffice to cast a reasonable doubt as to the director's independence. (*Beam, supra*, at p. 1050.)

■ A "mere threat of personal liability for approving a questioned transaction" by itself is insufficient to refute the disinterestedness or independence of a director. (*Aronson, supra*, 473 A.2d at p. 815.) Therefore, "[a]

plaintiff may not 'bootstrap allegations of futility' by pleading merely that 'the directors participated in the challenged transaction or that they would be reluctant to sue themselves.' [Citation.]" (*In re Sagent Technology, Inc., Derivative Litig.* (N.D.Cal. 2003) 278 F.Supp.2d 1079, 1089.) In that vein, the fact that the board approved the challenged transaction, of itself, does not establish demand futility under the theory that such approval "automatically connotes 'hostile interest' and 'guilty participation' by directors." (*Aronson, supra,* 473 A.2d at p. 814.) To hold otherwise would eviscerate the demand requirement entirely. (*Ibid.*)

### C.  *Derivative vs. Direct Claims*

As noted, a derivative suit is one in which the shareholder seeks "redress of the wrong to the corporation. [Citations.]" (*Klopstock, supra,* 17 Cal.2d at pp. 16–17.) Thus, an action " 'is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.' [Citations.]" (*Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106–107 [81 Cal.Rptr. 592, 460 P.2d 464].) On the other hand, a direct or individual suit by a stockholder " 'is a suit to enforce a right against the corporation which the stockholder possesses as an individual.' [Citation.]" (*Id.* at p. 107.) A direct (as opposed to a derivative) action is maintainable "only if the damages [are] not *incidental* to an injury to the corporation. [Citation.]" (*Nelson v. Anderson, supra,* 72 Cal.App.4th at p. 124.) And " '[t]he two actions are mutually exclusive: i.e., the right of action and recovery belongs to either the *shareholders* (direct action) or the *corporation* (derivative action).' " (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 650–651 [32 Cal.Rptr.3d 266] (*Oakland Raiders II*), quoting Friedman, Cal. Practice Guide: Corporations (The Rutter Group 2005) ¶ 6:598, p. 6-127.)

### III.  *Standing to Assert Derivative Claims*

Since each of the six causes of action of the Complaint is asserted as a derivative claim, we first examine whether Bader had standing to sue as a result of having complied with the demand requirement of section 800(b)(2). There is no assertion that Bader made a presuit demand upon Apple's board; accordingly, the question is whether she "allege[d] in the complaint with particularity [her] reasons for not making" a demand. (*Ibid.*) The failure to comply with this requirement under section 800(b)(2) leaves a shareholder/plaintiff without standing to bring a derivative claim on behalf of the corporation. (*Nelson v. Anderson, supra,* 72 Cal.App.4th at p. 127.)

Here, Bader claimed in her Complaint that she was exempt from the requirement of making a demand on the board because her suit did not challenge a business decision. Alternatively, she alleged that a demand would have been futile because "[t]he entire board [was] neither [disinterested] nor independent since every member of the board is liable for the material misstatements and omissions in the Proxy Statement, violations of the Plan, violations of statute and commission of waste."

## A.   *Claimed Exemption from Demand Requirement*

Bader contends that in light of the fact that her claim arose out of the Proxy Statement, "it is uniformly recognized" that the "demand futility rule excuses demand upon the [b]oard because the submission of a misleading proxy [statement] to shareholders is not an exercise of business judgment." In essence, she argues that by virtue of the nature of her claim (i.e., a challenge to the Proxy Statement), she was exempt from the requirement under section 800(b)(2) that she plead "with particularity" the reasons for being excused from making a presuit demand. We reject that argument.[7]

In support of her contention that she is exempt from making a demand on Apple's board, Bader cites *Vides v. Amelio* (S.D.N.Y. 2003) 265 F.Supp.2d 273 (*Vides*). In *Vides*, the plaintiff brought a derivative action asserting federal (violation of § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a)) and state law (breach of fiduciary duty) claims arising out of the distribution of a false and misleading proxy statement. (*Vides*, at p. 274.) The court, in rejecting the defendants' attempt to dismiss the case because of the absence of a presuit demand, held that under Delaware law, no demand was required for such a claim arising out of misstatements and omissions in a proxy statement. (*Id.* at p. 276.) The court reasoned that a presuit demand "has little bearing on a claim that a proxy statement makes a false assertion or an insufficient disclosure. Such questions are normally determined without particular need for business judgment, and the courts decide them as a matter of course. Whether a proxy statement properly omitted an item is regarded as a question of materiality, not one protected by the business judgment rule." (*Id.* at p. 275.)

Similarly, *Seinfeld v. Barrett* (D.Del., Mar. 31, 2006, Civ. A. No. 05-298-JJF) 2006 U.S.Dist. Lexis 14827, cited by Bader, involved a

---

[7] The first cause of action of the Complaint alleged that the Plan was invalid because it was not approved by the board of directors as a whole. This claim was based entirely on the assertion that the board, by deferring to the Committee for approval of the Plan, thereby "violated" section 311. Since this claim was not based upon alleged misrepresentations or omissions in the Proxy Statement, it would seem that Bader's argument that she is exempt from the demand requirement of section 800(b)(2) has no application to the first cause of action.

derivative suit in which the plaintiff alleged a federal securities claim arising out of the issuance of an allegedly false or misleading proxy statement that represented that bonuses listed in a proposed executive officer incentive compensation program (EOIP) would be tax deductible. The court held that the plaintiff's failure to make a presuit demand was excused because he had "pleaded facts sufficient to raise a reason to doubt that the action was taken honestly and in good faith . . . [by alleging] that [the d]efendants made a false or misleading statement when they promised tax deductions to shareholders in return for their approval of the EOIP, when, in fact, no tax deduction would result . . . ." (*Id.* at pp. *7–*8.)

*Katz v. Pels* (S.D.N.Y. 1991) 774 F.Supp. 121 (*Katz*), also cited by Bader, is not persuasive. There, the court rejected the defendants' claim that the plaintiffs' federal securities claim based upon omission of material facts in a proxy statement should be dismissed because there was no presuit demand. The court concluded that because the suit was both direct and derivative, no demand was required. (*Id.* at p. 127.) As we discuss *post*, we disagree with Bader's assertion that her challenge to the Proxy Statement here constituted a direct as well as a derivative claim. Accordingly, the reasoning of *Katz*, concluding that the plaintiffs could maintain parallel direct and derivative federal securities claims, does not apply here.

A number of cases have questioned the soundness of the holding in *Vides, supra*, 265 F.Supp.2d 273, and other cases similarly holding that the plaintiffs asserting derivative federal securities claims based upon misleading proxy statements are exempt from making a presuit demand on a corporation's board of directors. (See, e.g., *In re CNET Networks* (N.D.Cal. 2007) 483 F.Supp.2d 947, 966 (*CNET*) [rejecting *Vides*, concluding that weight of authority supported application of demand requirement to federal securities derivative suit]; *In re F5 Networks, Inc.* (W.D.Wn., Aug. 1, 2007, No. C06-794RSL) 2007 U.S.Dist. Lexis 56390, pp. *46–*47 [same].) For instance, in *St. Clair Shores Gen. Employees Ret. System v. Eibeler* (S.D.N.Y., Oct. 4, 2006, No. 06 Civ. 688 (SWK)) 2006 U.S.Dist. Lexis 72316 (*St. Clair Shores*), the plaintiff alleged direct and derivative claims that included a federal securities claim based upon alleged nondisclosure of material facts in three proxy statements that resulted in the approval of employee stock option plans. (*Id.* at pp. *1–*2.) The plaintiff argued that its derivative federal claim was "a species of derivative claim not subject to the demand requirement and business judgment rule." (*Id.* at p. *8.) The court rejected this position.

After acknowledging the existence of some conflict on the issue (*St. Clair Shores, supra*, 2006 U.S.Dist. Lexis 72316 at pp. *10–*11 & fn. 2 [citing *Vides*]), the court noted that the Second Circuit had held that the presuit demand requirement applied to federal securities litigation, and thereby had

impliedly held that the business judgment also applied. (*St. Clair Shores, supra*, at p. *15, citing *Lewis v. Graves* (2d Cir. 1983) 701 F.2d 245.) Further, after observing that a board's decision concerning the contents of a proxy statement would not under all circumstances be protected under the business judgment rule, the court held that "this is no reason to conclude, as some courts have, that a board's decision as to whether the corporation should pursue derivative litigation to vindicate violations of federal and state disclosure requirements is not entitled to the protection of the business judgment rule. [Citations.] [¶] To the contrary, it is axiomatic that 'decisions of a corporation—including the decision to initiate litigations—hould be made by the board of directors.' [Citations.]" (*St. Clair Shores*, at p. *18.) The *St. Clair Shores* court therefore held that since the business decision of whether to litigate a federal securities claim on behalf of the corporation is best left to the board, there was no sound reason to exempt such a derivative suit from the demand requirement. (*St. Clair Shores*, at pp. *18–*20; see also *Risberg ex rel. Aspen Technology, Inc. v. McArdle* (D.Mass. 2008) 529 F.Supp.2d 213, 225–226 [declining to follow *Vides*]; *Bader v. Blankfein* (E.D.N.Y., Dec. 19, 2008, No. 07-CV-1130 (SLT) (JMA)), 2008 U.S.Dist. Lexis 102698, pp. *16–*20 [same]; *In re Computer Sciences Corp. Derivative Litig.* (C.D.Cal., Mar. 26, 2007, No. CV 06-05288 MRP (Ex)) 2007 U.S.Dist. Lexis 25414, p. *12, fn. 4 [same].)

▮ We concur with the *St. Clair Shores* court and other courts that have similarly refused to recognize an exception to the demand requirement in instances in which the underlying wrong concerns alleged misrepresentations or omissions in a proxy statement. Such an exception would unnecessarily divest directors of the customary power they hold in the initiation and management of litigation in any instance where the alleged wrong to the corporation resulted from the issuance of a proxy statement. Just as the demand requirement "would be substantially diluted if prior board approval [of the challenged action] standing alone established futility" (*Lewis v. Graves, supra*, 701 F.2d at p. 248), creating a proxy statement exemption would permit a large group of derivative cases to proceed without either prior submission of the matter to the corporate board or a showing of demand futility. We do not view the circumstance—i.e., the fact that the underlying dispute concerns the issuance of an allegedly misleading proxy statement—to constitute an " 'extraordinary condition[]' " (*Kamen, supra*, 500 U.S. at p. 96) constituting an excuse for a demand. In light of the significant policy considerations for the demand requirement, there is in our opinion no basis for the creation of such a "hair-trigger demand excusal" (*Guttman v. Huang* (Del.Ch. 2003) 823 A.2d 492, 502) when the underlying suit involves the distribution of a proxy statement.

## B. *Demand Futility*

Although Bader's argument on appeal focuses on her claim that she is exempt from the demand requirement, the Complaint alleged in the alternative that a demand on Apple's board would have been futile in any event. Accordingly, we address whether Bader adequately alleged demand futility.

We are first confronted with whether to apply the *Aronson* or the *Rales* demand futility tests to the allegations of the Complaint. In the first cause of action, Bader alleged, citing section 311, that the Plan was unlawfully adopted because it was not approved by the full board of directors. Because the claim was that the board did *not* approve the Plan—and thus the challenge did not involve a decision of the board—it appears that the *Rales* test applies. (*Rales, supra,* 634 A.2d at pp. 933–934.) Although the claim that the Plan was unlawfully adopted—as we discuss in the unpublished portion of the opinion—is without merit, even were we to assume its potential merit, Bader did not plead facts justifying her failure to make a demand. She was required to allege facts "with particularity" (§ 800(b)(2)) sufficient to "create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand" (*Rales, supra,* at p. 934). The Complaint alleged that "[t]he entire board is neither [disinterested] nor independent since every member of the board is liable for the . . . violations of statute . . . ." This wholly conclusory allegation was insufficient to establish demand futility. (See *Aronson, supra,* 473 A.2d at p. 815 ["mere threat of personal liability for approving a questioned transaction" insufficient to challenge disinterestedness or independence of director].)

The second cause of action was founded on the distribution of the Proxy Statement that was allegedly defective due to misstatements and omissions of material fact. Bader alleged that the seven Apple directors "authorized the distribution of the Statement to solicit the proxies of the Company's stockholders for, . . . approval of the Plan . . . ." Because this claim was based upon a "conscious decision by directors to act" (*Rales, supra,* 634 A.2d at p. 933), we apply the *Aronson* test. (See, e.g., *CNET, supra,* 483 F.Supp.2d at p. 954 [*Aronson* test applied where majority of allegations concerned board actions, including preparing and signing proxy statements].) There was no allegation whatsoever by Bader that raised a reasonable doubt that any board member was "disinterested." (*Aronson, supra,* 473 A.2d at p. 814.) Nothing in the Complaint suggested "a potential personal benefit or detriment to the director as a result of the decision" to distribute the Proxy Statement. (*Beam, supra,* 845 A.2d at p. 1049, fn. omitted.) Indeed, at the hearing on the demurrer to the amended complaint, Bader's counsel acknowledged that "this is not a case involving an interested board."

Further, there were no allegations of specific fact that created a reasonable doubt that any Apple director was "independent" with respect to the challenged transaction. (*Aronson, supra*, 473 A.2d at p. 814.) The facts alleged raised no concern that "the directors [were] 'beholden' to [any of their colleagues] or so under their influence that their discretion would be sterilized. [Citations.]" (*Rales, supra*, 634 A.2d at pp. 936–937.) The mere assertion that "[t]he entire board is neither [disinterested] nor independent since every member of the board is liable for the material misstatements and omissions in the Proxy Statement" was wholly insufficient. (See *Shields, supra*, 15 Cal.App.4th at p. 1621 [broad, conclusory allegations that each director " 'participated in, conspired in, or aided and abetted' " activities complained of insufficient to establish demand futility]; see also *Findley, supra*, 109 Cal.App.2d at pp. 176–177.) And that allegation was belied by the fact that the Complaint sought no damage relief against the Apple directors for authorizing the distribution of the Proxy Statement.

Moreover, the act complained of (i.e., issuance of the Statement) does not constitute the type of gross misconduct or malfeasance that would create a reasonable doubt that "the challenged transaction was otherwise the product of a valid exercise of business judgment." (*Aronson, supra*, 473 A.2d at p. 814.) In evaluating this second prong of the *Aronson* test, courts "look at both the substantive due care (substance of the transaction) as well as the procedural due care (an informed decision) used by the directors. [Citation.]" (*Starrels v. First Nat. Bank of Chicago* (7th Cir. 1989) 870 F.2d 1168, 1171.) Here, as discussed in the unpublished portion of the opinion, Bader failed to show in her Complaint the existence of material misstatements or omissions in the Proxy Statement supporting her causes of action challenging the approval and implementation of the Plan. Certainly, the authorization to distribute the Statement was not the "rare case [where] a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists. [Citations.]" (*Aronson, supra*, at p. 815.)[8] Nor does the pleading show that in authorizing the Statement's distribution, the Apple board demonstrated "gross negligence" in the process by which it made its decision. (*Brehm v. Eisner, supra*, 746 A.2d at p. 259; see also *In re Abbott Laboratories Derivative Shareholders* (7th Cir. 2003) 325 F.3d 795, 808.) To the contrary, the only allegation in the Complaint pertaining to the board's decisionmaking process was extremely general, namely, that "all the defendants knew or should have known that the Proxy Statement contained materially false or misleading representations and omissions concerning the terms and provisions of the Plan, the deductibility of bonuses, and the number of persons eligible under the Plan."

[8] Indeed, Bader's counsel admitted during the hearing on the demurrer to the amended complaint that this is "not a case involving egregious misconduct."

■ We apply the two-prong *Aronson* test—namely, whether "(1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment" (*Aronson, supra*, 473 A.2d at p. 815)—to conclude that Bader failed to plead facts "with particularity" (§ 800(b)(2)) that the making of a demand on the board to pursue the claim for misrepresentation would have been futile. Accordingly, she lacked standing to pursue the derivative claims asserted in her second cause of action. (*Nelson v. Anderson, supra*, 72 Cal.App.4th at p. 127.) Because the third, fourth, and fifth causes of action of the Complaint were similarly founded on the misrepresentation claim of the second cause of action, they likewise failed.

The sixth cause of action alleged a claim of waste, based upon three different events: (1) the making of bonus payments under the Plan; (2) the issuance in 2003 and 2004 of nondeductible RSU's to senior officers; and (3) the grant in January 2000 to Jobs of stock options, which option grants may have been backdated and therefore nondeductible. As to the first event, to the extent that the conduct had its roots in the Proxy Statement that was alleged to have had material misrepresentations and omissions, the *Aronson* test would apply. If the making of the bonus payments is considered to be based upon a Plan which Bader claims was unlawful because it was not specifically authorized by the entire board, the *Rales* test would pertain. Since there are no additional demand futility allegations, Bader lacks standing to assert this derivative claim for waste for the reasons stated above, regardless of which test is employed. The second and third events of claimed waste would apparently be evaluated under the *Aronson* test. Here, however, there were no allegations from which the court can evaluate—on a director-by-director basis (*Shields, supra*, 15 Cal.App.4th at p. 1622)—whether a demand would have been futile (or even, to what extent, if any, each director played a role in the challenged transactions). Bader therefore lacked standing to pursue the derivative claims for waste.

IV., V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

VI. *Direct Claims*

The court below in sustaining the demurrer concluded that because the "primary injury under the circumstances alleged here is to the corporation,

---

*See footnote, *ante*, page 775.

not to the shareholder," the Complaint did not set forth a direct action. Bader challenges that conclusion, contending that she properly alleged both a derivative and a direct (class) action. We disagree.

Bader's claims consisted of challenges to (1) the adoption of the Plan under various theories, including the distribution of the Proxy Statement alleged to have contained misrepresentations and material omissions, (2) bonus payments made under the Plan, (3) issuance of RSU's to senior officers in 2003 and 2004, and (4) the stock option grant to Jobs in January 2000. The prayer requested a declaration that the shareholders' vote in favor of the Plan was void; cancellation of the Plan; "[a]n equitable accounting in favor of the Company for the losses that it has and will sustain by virtue of the conduct alleged" in the Complaint; equitable relief to prevent defendants from continuing to engage in wrongful acts determined unfair and unlawful under section 17200 of the Business and Professions Code; and, in the event Apple desired to implement a new bonus plan after the Plan's avoidance by the court, an order that the Plan would be subject to a new shareholders' vote after all proper disclosures were given. Looking to the gravamen of the Complaint (*Nelson v. Anderson, supra*, 72 Cal.App.4th at p. 124), we conclude that only derivative claims were alleged.

In *Schuster, supra*, 127 Cal.App.4th 305, the plaintiff—a shareholder of Peregrine System, Inc.—alleged a breach of fiduciary duty claim on behalf of himself and all current and former shareholders against officer and directors of the corporation. The operative complaint "alleged that in 'an effort to benefit themselves, certain [d]efendants: (a) solicited stockholder approval to increase the number of authorized shares of common stock . . . , enabling Peregrine to issue shares in payment for an ill-conceived acquisition spree by issuing stock to pay for those acquisitions and diluting the interests of [p]laintiff and the [c]lass; (b) overstated assets and equity; (c) improperly recognized at least $509 million of revenue; and (d) understated ex-penses. . . ." (*Id.* at p. 313.) The plaintiff alleged further that the members of the class suffered damage " 'by owning shares of stock now subject to the "fraud penalty," pursuant to which shares of stock are undervalued because the [c]ompany has lost credibility and the market no longer believes a [c]ompany's . . . reported numbers . . .' . . . ." (*Ibid.*) The *Schuster* court rejected the plaintiff's argument that he could assert a direct claim on his behalf and on behalf of other Peregrine shareholders, concluding that only a derivative action was alleged because the plaintiff's and the putative class's damages, "diminution in stock value, [were] incidental to the injury to Peregrine." (*Id.* at p. 314.)

Likewise, the damage alleged here—namely, bonus payments to executives, RSU's paid to senior officers in a manner that resulted in their not being deductible by Apple, and the stock option grant to Jobs that was also allegedly nondeductible—consisted of harm to the corporation itself. (See, e.g., *Avikian v. WTC Financial Corp.* (2002) 98 Cal.App.4th 1108, 1115 [120 Cal.Rptr.2d 243] ["core claim" of officers' and directors' mismanagement and entering into self-serving deals was injury to corporation and hence derivative]; *PacLink Communications Internat., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 964 [109 Cal.Rptr.2d 436] ["essence of" claim based on fraudulent transfer of corporation's assets without consideration was injury to corporation and hence derivative].) Bader's alleged damage—as well as any damage to members of the putative class (i.e., Apple shareholders solicited to vote on the Plan)—consisted of a reduction in stock value caused by the depletion of corporate funds from the unauthorized payments and the absence of tax deductions. Her damage was incidental to that of the corporation. (*Schuster, supra,* 127 Cal.App.4th at p. 314.)

So too was the case in *Oakland Raiders II, supra,* 131 Cal.App.4th 621, where we held that the plaintiff's breach of fiduciary duty claim that concerned alleged corporate mismanagement and diversion of corporate assets, including millions of dollars paid to corporate executives through " 'an unauthorized compensation program' " (*id.* at p. 651) was derivative in nature. (*Id.* at pp. 650–652; see also *Indiana Elec. Workers Pension Trust Fund, IBEW v. Dunn* (N.D.Cal., Mar. 28, 2008, No. C-06-01711 RMW) 2008 U.S.Dist. Lexis 34600 [claims challenging compensation and options approved by shareholders based upon misrepresentations in proxy statements held derivative].) Furthermore, Apple would have been the "ultimate beneficiary" (*Klopstock, supra,* 17 Cal.2d at p. 21) of any relief sought under the Complaint.

Even were we to agree with Bader that Delaware law applies to this inquiry, we would conclude that her claims are derivative. In *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.* (Del. 2004) 845 A.2d 1031, 1035 (*Tooley*), the Delaware Supreme Court held that the resolution of whether a claim is direct or derivative turns on two inquiries: "[1] Who suffered the alleged harm—the corporation or the suing stockholder individually—and [2] who would receive the benefit of the recovery or other remedy?" We apply this two-part test here to hold that Bader's claims are derivative. It was the corporation that was allegedly harmed as a result of the approval and implementation of the Plan, payments under the Plan, and the granting of the RSU's and stock options claimed to have been nondeductible. Although Bader claims that she and members of the putative class were also harmed because their vote as shareholders was essentially subverted by the Proxy Statement claimed to have contained misrepresentations and material omissions, we disagree that her claim is direct based upon this theory. A contrary

holding would in our view transform truly derivative claims into direct ones simply because conduct causing direct corporate harm had an indirect impact in some fashion on the shareholders as well. (Cf. *Rankin v. Frebank Co.* (1975) 47 Cal.App.3d 75, 95 [121 Cal.Rptr. 348] [individual shareholder may not maintain direct suit for corporate wrong that also results in destruction or diminution in value of his or her stock interest].) Second (under *Tooley*), Apple was the party that stood to receive the benefit of any recovery or other remedy sought in the Complaint. Under the theories alleged and prayer sought in the Complaint, the corporation would receive the alleged benefit of the invalidation of the Plan, prevention of further bonus payments under it, and an accounting of the losses resulting from the conduct alleged in the Complaint. (See *Grosset v. Wenaas, supra,* 42 Cal.4th at p. 1114: "If successful, a derivative claim will accrue to the direct benefit of the corporation and not to the stockholder who litigated it.")[16]

We therefore conclude that Bader failed to allege sufficient facts in the Complaint to support a direct action.[17]

VII., VIII.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[16] In this instance, Bader filed suit *after* the proxy vote was taken on April 21, 2005, approving the Plan. We express no view on the question of whether Bader could have maintained a direct action to enjoin the proxy vote due to material misrepresentations in the Proxy Statement, had she (a) filed suit before the proxy vote, and (b) adequately pleaded that the Statement was false or misleading.

[17] We are not persuaded by the authorities cited by Bader in support of her contention that she pleaded a viable direct action. For instance, the *Tri-Star* case (*In re Tri-Star Pictures, Inc. Litigation* (Del.Ch., June 14, 1990, Civ. A. No. 9477) 1990 Del.Ch. Lexis 80, affd. in part, revd. in part (Del. 1993) 634 A.2d 319), cited by Bader for the proposition that she could maintain a direct action, was rejected by the Delaware Supreme Court in *Tooley, supra,* 845 A.2d at page 1038, footnote 21, because *Tri-Star* had used the formula that a plaintiff was required to have sustained special injury to assert a direct action, a formula that the court in *Tooley* discarded. In *Thorpe v. CERBCO, Inc.* (Del.Ch., Jan. 26, 1993, Civ. A. No. 11713) 1993 Del.Ch. Lexis 16, the claim was that the defendants obtained voting control as a result of a shareholder vote based upon a misleading proxy statement; no such injury to the individual shareholder, Bader, or the putative class, was alleged here. In *Noerr v. Greenwood* (Del.Ch., Nov. 22, 2002, Civ. A. No. 14320-NC) 2002 Del.Ch. Lexis 134, the question before the court was class certification; the court did not squarely address the issue of whether the plaintiff's claims were direct or derivative. And *Unanue v. Caribbean Canneries, Inc.* (D.Del. 1971) 323 F.Supp. 63 concerned whether a case filed in state court by a plaintiff claiming he was denied registration rights was properly removed to federal court based upon diversity jurisdiction; it did not involve the issue of whether the claim was direct or derivative. In any event, the case here does not involve the type of claim (denial of registration rights) that appears to involve a direct injury to the stockholder.

*See footnote, *ante,* page 775.

## DISPOSITION

The judgment of dismissal is affirmed.

Bamattre-Manoukian, Acting P. J., and Mihara, J., concurred.