

FILED

FEB 19 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. CC-14-1307-PaTaKu |
| | ) | |
| MARK CHRISTIAN TARCZYNSKI, | ) | Bankr. No. 13-38642-BB |
| | ) | |
| Debtor. | ) | Adv. Proc. 14-01149-BB |
| _____ | ) | |
| | ) | |
| 1100 WILSHIRE BLVD., LLC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **M E M O R A N D U M**[1] |
| | ) | |
| MARK CHRISTIAN TARCZYNSKI; | ) | |
| 1100 WILSHIRE PROPERTY OWNERS | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on November 20, 2014
at Los Angeles, California

Filed - February 19, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Sheri Bluebond, Chief Bankruptcy Judge, Presiding

---

Appearances:   Joshua Ruben Furman argued for appellant 1100
Wilshire Blvd., LLC; Mark M. Sharf of Merritt,
Hagen & Sharf LLP argued for appellee Mark
Christian Tarczynski.

---

Before: PAPPAS, TAYLOR, and KURTZ, Bankruptcy Judges.

---

[1]   This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

1100 Wilshire Blvd., LLC ("Appellant") appeals the order of the bankruptcy court dismissing its § 523(a)[2] adversary proceeding against chapter 7 debtor Mark Tarczynski ("Debtor") for failure to state a claim for relief. We REVERSE that order and REMAND this matter to the bankruptcy court for further proceedings.

**FACTS**

The building known as 1100 Wilshire Boulevard is a thirty-eight story structure located in downtown Los Angeles, consisting of mixed-use residential and commercial condominium units (the "Property"). Management of the Property is controlled by the 1100 Wilshire Property Owners' Association (the "POA"), a California mutual benefit corporation composed of the owners of the condominium units in the Property. The POA acts through a five-member board of directors (the "POA Board").

Appellant, a California limited liability company owned by Joel and Spencer Kassimir, owns two residential condominium units situated on the south side of the thirty-seventh and thirty-eighth floors of the Property. At all relevant times Appellant was a member of the POA but not a member of the POA Board.

Debtor is a real estate consultant and a former member of the POA Board. Adam Tischer is a former member of the POA Board. John Mackey is a current member of the POA Board. Debtor and

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure 1–86.

Mackey together own Wilshire Commercial, LLC, a corporation that owns a commercial condominium unit in the Property, and is a member of the POA.

In June 2013, JP Morgan Chase Bank ("Chase") announced that it would open a branch office on the first floor of the Property in space leased from Wilshire Commercial. Shortly thereafter, the POA Board and Chase announced that Chase would install a large sign on the exterior of the Property. Among other features, the sign would spell out "CHASE" in nine-foot illuminated letters mounted directly outside Appellant's units. The lease for placement of the sign provided for approximately $3.5 million in annual payments from Chase to 1100 Wilshire Boulevard.

Concerned with these developments, on June 18, 2013, counsel for Appellant sent to the POA Board president a "Pre-litigation Demand for Action by the Board" (the "Demand Letter"). Among other things, the Demand Letter requested that the POA Board not grant any signage rights on the Property without an authorizing vote of the POA membership and that the POA Board investigate certain allegedly improper self-dealings by some POA Board members regarding the Property.

Counsel for the POA Board provided a lengthy response to the Demand Letter on July 5, 2013. In it, he defended the POA Board's authority to enter into, and their strategy in negotiating, the Chase sign lease. He pointed out that without the lease income, the POA members' "assessments would need to increase substantially in order to pay for necessary repairs and improvements to the building." As to Appellant's allegations

-3-

about improper activities by POA Board members, POA counsel demanded proof of Appellant's claims and cautioned Appellant's counsel that these allegations could be considered "defamatory and subject both you and your clients to damages for such defamation."

Apparently dissatisfied with this response, Appellant filed a lawsuit against the POA, Tischer, Tarczynski, and Chase in Los Angeles Superior Court on August 20, 2013 (the "State Court Action"). In its original complaint, Appellant sought a declaratory judgment that, because of the conflicting interests of POA Board members, the lease for the sign between the POA and Chase was void. Appellant also requested that a restraining order and an injunction be entered preventing construction of the sign.[3] It also sought an order directing the election of a new POA Board.

Appellant's application for a temporary restraining order and preliminary injunction to stop construction of the sign was denied by the state court on September 4, 2013. Thereafter, Appellant filed a First Amended Complaint deleting the request for injunctive relief, but now asserting, as a representative of the POA, several derivative causes of action against Debtor and Tischer as POA Board members for their alleged breach of fiduciary duty, conspiracy to breach fiduciary duty, intentional

---

[3] Three successive versions of the complaint were filed in state court, in each of which Appellant argues that the POA Board and Debtor were not properly elected, and alleging other violations of the Davis-Sterling Common Interest Development Act, Cal. Civ. Code §§ 4000-4070 (2013).

-4-

interference with prospective economic advantage, and constructive fraud.

On December 2, 2013, Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code. As a result, the State Court Action was stayed as to Debtor. Appellant, ostensibly acting as a representative on behalf of the POA under Rule 7023.1/Civil Rule 23.1, filed an adversary complaint against Debtor seeking an exception to discharge under § 523(a)(2)(A), (a)(4), and (a)(6) for the debts arising from the claims asserted in the State Court Action (the "First Adversary Complaint").

On April 10, 2014, Debtor filed a motion to dismiss the First Adversary Complaint under Rule 7012/Civil Rule 12(b)(6). In the motion, Debtor argued that Appellant was not an adequate representative of the POA for purposes of pursuing the discharge exception action because Appellant had sued the POA in the State Court Action. Debtor also alleged that the First Adversary Complaint failed to allege fraud with specificity as required by Rule 7009/Civil Rule 9. Appellant responded to the motion, and on April 9, 2014, filed an amended adversary complaint (the "Amended Adversary Complaint") pleading more facts regarding Debtor's alleged improper conduct.[4]

---

[4] On April 16, 2014, Appellant also filed a Second Amended Complaint in the State Court Action, adding Mackey and Wilshire Commercial as defendants, adding new causes of action against the POA and Chase for public nuisance (i.e., diminishing the value of the individual owner's interests in the Property) and private nuisance (i.e., for light pollution and excessive electromagnetic radiation) (the "Second Amended State Complaint" or "SASC"). The Amended Adversary Complaint indicates that a copy of the SASC was
(continued...)

-5-

The bankruptcy court heard Debtor's motion to dismiss on May 13, 2014. Before the hearing, the court had issued a tentative ruling indicating that it was inclined to:

> [g]rant [the] motion without leave to amend. [Appellant] lacks standing to prosecute this action and cannot do so in a derivative capacity. [Appellant] is not an appropriate representative in light of antagonism between the interests of the plaintiff and the homeowners association. Further, directors are entitled to exercise their business judgment as to whether or not to sue on behalf of the corporation and it appears that they have done so and have concluded that no action against the debtor is appropriate or warranted. Further, [the Amended Adversary Complaint] fails to state a claim under sections 523(a)(2)(A), (4) or (6). What representations did the debtor make to the plaintiff on which the plaintiff relied? Amended complaint pleads that debtor was not a member of the board of directors at the time the signage lease was signed. How did the debtor owe the plaintiff a fiduciary duty? What did he do that breached it? If debtor was not on the board when the lease was signed, what did he do that was a wrongful, intentional and malicious act?

After hearing arguments from counsel for Appellant and Debtor, the bankruptcy court granted the motion to dismiss, explaining:

> Well, I'm going to grant the motion to dismiss because I don't think it works for you to assert these claims derivatively, particularly not when you're also alleging that the corporation was controlled by parties who were in conspiracy with this. . . . You've got to have misrepresentation that was relied on to the detriment [of the POA] — and if you're making these . . . misrepresentations [to] parties he's conspir[ing] with, then he didn't defraud Mackey and the gang. . . . I don't think this works to have you step into those shoes derivatively on these facts. And, as I say, I don't think the corporation has got a claim in light of the way you've framed the nature of the misconduct here. So I'm going to grant the motion without leave

---

[4](...continued) attached as an exhibit. It was not. However, a copy of the SASC was attached to the Debtor's reply brief in support of the motion to dismiss.

to amend[.]

Hr'g Tr. 23:19-24:11, May 13, 2014.

The bankruptcy court entered an order dismissing Appellant's Amended Adversary Complaint without leave to amend on May 30, 2014 "for the reasons set forth on the record at the time of the hearing on the motion and other good cause appearing therefor."

Appellant filed a timely appeal on June 12, 2014.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Whether the bankruptcy court erred in dismissing the Appellant's Amended Adversary Complaint under Rule 7012/Civil Rule 12(b)(6).

Whether the bankruptcy court abused its discretion in deciding that Appellant was not an adequate representative of the POA for the purposes of Rule 7023.1/Civil Rule 23.1.

**STANDARDS OF REVIEW**

A trial court's dismissal of an action under Civil Rule 12(b)(6) for failure to state a claim is reviewed de novo. N.M. State Inv. Council v. Ernst & Young, LLP, 641 F.3d 1089, 1094 (9th Cir. 2011); Barnes v. Belice (In re Belice), 461 B.R. 564, 572 (9th Cir. BAP 2011). A trial court's determination as to the adequacy of representation under Civil Rule 23.1 is reviewed for abuse of discretion. Kayes v. Pac. Lumber Co., 51 F.3d 1449, 1464 (9th Cir. 1995). A bankruptcy court abuses its discretion if it applies an incorrect legal standard, or

misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support from evidence in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION

Under Civil Rule 12(b)(6), made applicable in adversary proceedings by Rule 7012, a bankruptcy court may dismiss an adversary complaint if it fails to "state a claim upon which relief can be granted." In reviewing Debtor's Civil Rule 12(b)(6) motion, the bankruptcy court was required to accept as true all facts alleged in Appellant's Amended Adversary Complaint and to draw all reasonable inferences in Appellant's favor. Newcal Indus., Inc. v. Ikon Office Solutions, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). An inference is reasonable "in light of the competing inferences" that might show contrary results. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). However, the bankruptcy court was not required to accept as true conclusory allegations in Appellant's complaint, nor to accept any legal characterizations cast in the form of factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).

To survive a Civil Rule 12(b)(6) dismissal motion, a complaint must present cognizable legal theories and sufficient factual allegations to support those theories. See Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121-22 (9th Cir. 2008). As the Supreme Court has explained:

a complaint must contain sufficient factual matter,

-8-

> accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). By definition, a claim cannot be plausible when it lacks any legal basis. Cedano v. Aurora Loan Servs. (In re Cedano), 470 B.R. 522, 528 (9th Cir. BAP 2012). A dismissal under Civil Rule 12(b)(6) may be based on either the lack of a cognizable legal theory, or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d at 1121.

In deciding a Civil Rule 12(b)(6) motion to dismiss, the trial court may consider the existence and content of documents attached to and referenced in the complaint. Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001). Even when a document is not physically attached to the complaint, the court may consider its existence and contents when its authenticity is not contested and when it necessarily is relied upon by the plaintiff in its complaint. See United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003).

Here, the bankruptcy court dismissed Appellant's Amended Adversary Complaint because it concluded that the claims it asserted had no legal basis. The bankruptcy court determined that the legal theory espoused in that complaint — that Appellant could prosecute a § 523(a) exception to discharge action against Debtor as a representative under Rule 7023.1/Civil Rule 23.1 on behalf of an alleged creditor, the POA — lacked merit because

Appellant was antagonistic to the interests of the other members of the POA. Hr'g Tr. 3:22-4:2.[5] In the alternative, the bankruptcy court concluded that dismissal was justified because: (1) The "Business Judgment Rule" supported the apparent decision by the POA Board not to prosecute a § 523(a) claim in its own right, Hr'g Tr. 4:2-7; and (2) assuming that Appellant's claim that the POA Board members conspired with Debtor were true, then Appellant's derivative claims against Debtor were barred by the equitable doctrine of in pari delicto, Hr'g Tr. 23:1-5.

After a de novo review of the record, we disagree with the bankruptcy court's determination that dismissal of Debtor's complaint was appropriate.

**I.**

**The bankruptcy court erred in granting the motion to dismiss by drawing inferences in favor of Debtor to conclude that Appellant was not an adequate representative of the POA.**

It is not disputed in this appeal that, because Appellant is not a creditor of Debtor, it lacks standing to prosecute an exception to discharge action against him in its own right. See § 523(c)(1) (providing that a debt excepted from discharge under subsections (2), (4) or (6) shall be discharged "unless, on request of the creditor to whom such debt is owed" the bankruptcy court determines such debt to be excepted from discharge); Rule 4007(a) (providing that "[a] debtor or any creditor may file

---

[5] The bankruptcy judge recited the full text of the tentative decision on the record at the hearing. Although the bankruptcy judge did not expressly indicate that she intended to adopt the tentative, we assume, as have the parties in their briefs in this appeal, that the tentative ruling explains the reasons for its ruling.

-10-

a complaint to obtain a determination of the dischargeability of any debt). Rather, Appellant's action is based on its alleged capacity to sue Debtor as a representative of the POA under Rule 7023.1. Rule 7023.1 makes Civil Rule 23.1 applicable in adversary proceedings. Civil Rule 23.1 provides in relevant part:

> Derivative Actions
>
> (a) Prerequisites. This rule applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.
>
> (b) Pleading Requirements. The complaint must be verified and must: (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law; (2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and (3) state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort.

The Ninth Circuit recently discussed the history and purpose of derivative suits under Civil Rule 23.1:

> The derivative form of action permits an individual shareholder to bring "suit to enforce a corporate cause of action against officers, directors, and third parties." Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95, 111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991) (quoting Ross v. Bernhard, 396 U.S. 531, 534, 90 S. Ct. 733, 24 L. Ed. 2d 729 (1970)) (emphasis omitted). "Devised as a suit in equity, the purpose of the derivative action [is] to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'" Id. (quoting Cohen v. Beneficial Loan Corp., 337 U.S. 541, 548,

-11-

69 S. Ct. 1221, 93 L. Ed. 1528 (1949)).
Rosenbloom v. Pyott, 765 F.3d 1137, 1147-48 (9th Cir. 2014).

In its Amended Adversary Complaint, Appellant alleges that it is and was at all relevant times a member of the POA, and that it "will adequately and fairly represent the interests of the POA and members in enforcing and prosecuting its rights." The complaint asserts that Appellant made a demand on the POA Board to take action against Debtor and other parties, and the POA Board "has taken no steps to enforce its rights against these Board members and former Board members." Appellant then alleges in the complaint, with particularity, the reasons why the POA Board was so dominated by Debtor that any further demand on the POA Board to take action against Debtor would be futile. Based upon these allegations, Appellant asserts that it should be allowed to pursue an exception to discharge of the POA's claims against Debtor under § 523(a)(2)(A), (a)(4), and (a)(6).

Neither the bankruptcy court nor Debtor disputes Appellant's status as a member of the POA, nor that the POA has not pursued an exception to discharge action in Debtor's bankruptcy case. However, Debtor hotly disputes the factual assertions in the complaint. To support its dismissal motion, Debtor focuses on its procedural objections under Civil Rule 23.1: that, based upon this record, Appellant cannot appropriately act as a representative of the interests of the POA in the adversary proceeding; that Appellant did not make an adequate demand on the POA Board to act in advance of commencing this action; and that the business judgment rule applies to foreclose Appellant's action. Appellant disagrees with these contentions.

In our view, the issues raised by Debtor in its motion to dismiss all present fundamentally factual disputes. In general, a trial court may not rule on disputed factual matters in resolving a Civil Rule 12(b)(6) dismissal motion. Penilla v. City of Huntington Park, 115 F.3d 707, 710 (9th Cir. 1997). As discussed below, in resolving the motion to dismiss, the bankruptcy court appears to have drawn several critical inferences in favor of Debtor, the moving party, something which is not appropriate in this context. Ikon Office Solutions, 513 F.3d at 1043 n.2. We must therefore reverse the bankruptcy court's order.

**A. Adequate Representation.**

For purposes of Civil Rule 23.1, "[a]n adequate representative must have the capacity to vigorously and conscientiously prosecute a derivative suit and be free from economic interests that are antagonistic to the interests of the class." Larson v. Dumke, 900 F.2d 1363, 1367 (9th Cir. 1989) (citing Lewis v. Curtis, 671 F.2d 779, 788-89 (3rd Cir. 1982)). The Ninth Circuit has held that a disqualifying conflict does not necessarily exist when a party asserts both a derivative claim on behalf of a corporation, and a personal claim against the corporation. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1988) ("The mere presence of an injury to the corporation does not negate the simultaneous presence of an individual injury . . . [because] an action may lie both derivatively and individually based on the same conduct"). While a trial court must consider any conflicts of interest in determining the adequacy of representation, "[t]he prevailing view appears to be that there

is no per se rule prohibiting shareholders from simultaneously bringing both direct and derivative actions," and that the better-reasoned and predominant rule is to look behind the surface duality of the two types of actions, and to allow them to proceed unless an actual conflict emerges. Natomas Gardens Inv. Group, LLC v. Sinadinos, 2009 WL 1363382, *15 (E.D. Cal. 2009) (applying both California and federal derivative law); see also Field Turf Builders, LLC v. Fieldturf USA, Inc., 2010 WL 817628, at *12 (D. Ore. 2010) (no per se rule); In re Rasterops Corp. Sec. Litig., 1993 WL 476651, at *13 (N.D. Cal Sept. 10, 2010)(same); First Am. Bank and Trust by Levitt v. Frogel, 726 F. Supp. 1292, 1298 (S.D. Fla. 1989) (simultaneous direct and derivative claims could proceed); Keyser v. Commonwealth Nat. Fin. Corp., 120 F.R.D. 489, 492 n.8 (M.D. Pa. 1988) (in holding that the plaintiff's simultaneous direct and derivative claims could proceed, the court stated, "[i]f and when plaintiffs prove their allegations and the remedy stage is reached, the court may take corrective measures to resolve any actual conflicts which arise at that time"). In short, the case law instructs that a derivative claim should not be dismissed solely because the plaintiff is also asserting direct claims against the corporation.

In granting Debtor's motion to dismiss, the bankruptcy court noted in its tentative ruling that Appellant could not adequately and fairly represent the POA "in light of [the] antagonism between the interests of the plaintiff and the homeowners association." However, the bankruptcy court did not explain in its tentative ruling or final order the conflict or antagonism to

-14-

which it was referring. The relief sought in the Amended Adversary Complaint is an exception to Debtor's ability to discharge what Appellant alleges are $3,471,814 in cumulative damages owed to the POA. Plaintiff seeks no relief in the Amended Adversary Complaint against the POA or the POA Board.

Apparently, the bankruptcy court was concerned that, given the claims being asserted by Appellant in the State Court Action, its interests were antagonistic to the POA. In particular, Appellant's SASC asserts three non-derivative claims: one to void the sign lease between the POA and Chase; another in favor of both Appellant and the POA to recover $5 million in public nuisance damages from Debtor; and another to recover $200,000 in damages from the POA and Debtor for private nuisance.[6] Of these, it is a matter of disputed fact whether voiding the sign lease would prejudice the interests of the POA and its members. And the claim for $5 million for public nuisance also arguably favors all POA members, not just Appellant.

---

[6] Cal. Civ. Code § 3479 defines a nuisance as "anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . ." Newhall Land & Farming Co. v. Super. Ct., 19 Cal. App. 4th 334, 341 (1993). A nuisance may be a public nuisance, a private nuisance, or both. Venuto v. Owens-Corning Fiberglas Corp., 22 Cal.App.3d 116, 124 (1971). "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Cal. Civ. Code § 3480. Every other nuisance is private. Cal. Civ. Code, § 3481. However, "[a] private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise." Cal. Civ. Code § 3493.

Of the causes of action asserted in the SASC, only Appellant's private nuisance claim against the POA and Debtor, on its face, potentially favors Appellant to the detriment of the POA. But even this is disputed. At oral argument, counsel for Appellant explained that the POA was named as a defendant as to the nuisance claims in state court only because it was the owner of the Property. Hr'g Tr. 17:2-5.[7] If that is correct, whether the private nuisance claim gives rise to a disqualifying conflict of interest between Appellant and the POA is matter for debate and proof. Instead, the bankruptcy court concluded that Appellant's assertion of the nuisance claim against the POA prevented Appellant from fairly and adequately representing the POA in the adversary proceeding. While such a conclusion may ultimately prove correct after a fuller development of the relevant facts, it was premature for the bankruptcy court to adopt that conclusion based solely on inferences drawn from the allegations of the Amended Adversary Complaint and the SASC.

In sum, here, the bankruptcy court appeared to determine that Appellant was not an adequate representative of the POA under Civil Rule 23.1 to prosecute the § 523(a) exception to discharge claims against Debtor by relying upon disputed facts, and by drawing inferences from the alleged facts against

[7] The owner of real property is ordinarily a necessary party to be joined in any litigation affecting that property. However, this is a discretionary rule of fairness under California law and may not be applicable where the owner's interest is adequately represented by another party. People ex rel. Lungren v. Cmty. Redevelopment Agency, 56 Cal.App.4th 868, 876 (1997).

-16-

Appellant. This was impermissible in resolving a motion to dismiss and, as a result, an abuse of discretion.

### B. The Business Judgment Rule and Demand Futility

The United States Supreme Court has described the Business Judgment Rule as a "deferential" common law principle applicable in most states that implements "the basic principle of corporate governance that the decisions of a corporation — including the decision to initiate litigation — should be made by the board of directors or the majority of shareholders." Kamen, 500 U.S. at 101. The California Supreme Court has explained that "[t]he common law business judgment rule has two components — one which immunizes [corporate] directors from personal liability if they act in accordance with its requirements, and another which insulates from court intervention those management decisions which are made by directors in good faith in what the directors believe is the organization's best interest." Lamden v. LaJolla Clubdominium Homeowners Ass'n, 980 P.2d 940, 948 (Cal. 1999).

The Business Judgment Rule is implemented in this context by the "demand requirement" set forth in Civil Rule 23.1(b)(3). Kamen, 500 U.S. at 101. That Rule requires that a representative's complaint "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." The Supreme Court has instructed that the demand requirements for a derivative suit are determined by the law of the state of incorporation. Kamen, 500 U.S. at 96-97. In this case, California's law nearly

-17-

duplicates Civil Rule 23.1(b)(3), providing in relevant part that:

> No action may be instituted or maintained in right of any domestic or foreign corporation by any holder of shares . . . of the corporation unless both of the following conditions exist: . . . (2) The plaintiff alleges in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort[.]

Cal. Corp. Code § 800 (b). California case law links the reasoning for this requirement to the Business Judgment Rule.

> Where a board of directors, in refusing to commence an action to redress an alleged wrong against a corporation, acts in good faith within the scope of its discretionary power and reasonably believes its refusal to commence the action is good business judgment in the best interest of the corporation, a stockholder is not authorized to interfere with such discretion by commencing the action.

Findley v. Garrett, 109 Cal.App.2d 166, 174 (1952).

Appellant, in the Amended Adversary Complaint, asserted that it made a demand on the POA Board to pursue actions against Debtor and his alleged accomplices, and that the POA Board had taken no action. Appellant then alleged with particularity several reasons that it would be a futile gesture for it to request any further action from the POA Board. In our view, assuming the facts asserted by Appellant were proven to be true, the Amended Adversary Complaint satisfied the pleading requirements of Civil Rule 23.1(b) and Cal. Corp. § 800 (b).

The bankruptcy court, as an alternative grounds for dismissal, explained its view that the POA Board was entitled to exercise its business judgment to conclude that no action against Debtor was "appropriate or warranted." Hr'g Tr. 4:2-7. Based on

-18-

this record, however, it is difficult to understand whether the POA Board actually took any action on the Demand Letter. Indeed, since there is no evidence in the record regarding any board action, it was error for the bankruptcy court to infer that the POA Board "concluded that no action against the debtor is appropriate or warranted."

More specifically, the Demand Letter was sent by Appellant's lawyer to counsel for the POA Board on June 18, 2013, and provided a four-page litany of grievances by Appellant against the POA Board. The specific allegations of conflicts of interest among the POA Board members is contained in Paragraph 8.

> **8. Conflict of interest among the board members who retain significant personal interest in the commercial property and/or the profitability of the commercial property.** The Board has been dominated by persons whose interests are intertwined with the commercial lots. Not surprisingly, the Board has made innumerable decisions that favor the commercial owners over the interests of the residential owners — and i[n] many cases to the detriment of the residential owners. The Board has continued to perpetuate the unconscionable cost-splitting agreement in the CC&Rs between commercial and residential owners, and the unconscionable nature of the commercial owners' guaranteed board positions and voting powers.
>
> These concerns are serious. The conduct by the Board described herein demonstrates repeated, reckless breaches of the Board's fiduciary duties to the residential owners. While all parties recognize that the building includes commercial use, and that commercial uses may sometimes be less convenient for residents, that does not permit the property rights and safety of the residential owners to be compromised in the name of total commercial exploitation. . . . We further demand that the Board immediately . . . investigate those Board members involved in the aforementioned commercial dealings, and take such legal action against those persons as is necessary to preserve the rights of the Association.

Although the Demand Letter was sent to counsel for the POA Board, neither the Demand Letter nor other excerpts of the record

-19-

indicate that the POA Board members were provided with copies of the Demand Letter. Counsel for the POA responded to the Demand Letter twice. The first response was on June 21, 2013 (the "First Response Letter"). In the Demand Letter, counsel for Appellant had indicated that he and his client would attend an "open board meeting" on June 24, 2013. In the First Response Letter, counsel for the POA Board forbade Appellant's counsel to attend the meeting because the POA Board's counsel could not attend. There is no indication in the record that Appellant attended the open meeting without counsel. Further, the First Response Letter does not indicate if the members of the POA Board were copied.

Counsel for the POA provided a more detailed response on July 5, 2013 (the "Second Response Letter"). Counsel's specific response concerning Appellant's allegations about the alleged conflict of interest by members of the POA Board was:

> You state that the board is "dominated by persons whose interests are intertwined with the commercial lots." I have no idea where you are taking this information from. It is true that the commercial owner, who is guaranteed representation and a single space on the board, has elected a representative to the board. However, to my knowledge, no other member of the board has any financial interest in the commercial owner. Since the board is composed of five individuals, elected by the entire Association, exactly how is it that the commercial owner is dominating the decisions of the board of directors? The CC&Rs pre-date each and every owner's interest in the building and bind each and every owner. The CC&Rs are clear that the board of directors has no right to interfere with the commercial owners' lawful use of the commercial spaces in the building. Moreover, the CC&Rs state that they may not be amended to change the commercial owners' interest in the building without the commercial owners' approval. This is simply a fact; this does not show any sort of conflict of interest. . . .

> You state that the Association should recover any

-20-

funds "misappropriated or improperly disposed of by the relevant board members." However, you have never stated once in your letter that any funds were misappropriated or "improperly disposed of." The board knows of no such instance, and I know of no such instances. If you have evidence of misappropriation, then I hereby demand that you provide them to me, in writing, immediately. If you do not, then I strongly suggest that you cease this spurious claim since it is defamatory and subjects both you and your clients to damages for such defamation.

Fairly interpreted, the letters show that Debtor made demand on the POA Board as required by Civil Rule 23.1 ("The complaint must be verified and must . . . (3) state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members)[.]"); and Cal. Civ. Code 800(b)(2) ("The plaintiff alleges in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires[.]").

After further proceedings, Debtor may be able to demonstrate sufficient facts to show that the POA's actions justify the protections of the Business Judgment Rule. However, here the bankruptcy court inferred that the POA made a business decision not to pursue a § 523(a) action against Debtor based solely on the POA Board's failure to join in Debtor's action or to file its own action. In resolving the motion to dismiss, on this record, such an inference was improper under Civil Rule 12(b)(6).

Debtor thus satisfies the first part of the federal and California procedural rules for derivative actions. However, as noted, the POA Board does not appear to have taken any action in state court against Debtor, nor has it sought a claim against Debtor in this appeal. Appellant has not sought any further

action from the POA Board because, as argued in the First Amended Complaint, such requests would be "futile." Thus, the second part of the federal and California derivative rules attach: Civil Rule 23.1(b)(2)(B) ("The complaint must . . . state with particularity: . . . (B) the reasons for not obtaining the action or not making the effort."); Cal. Corp. Code § 800(b)(2) ("The plaintiff alleges in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort[.]").

The "reasons for not making such effort" is known as the demand futility rule. "Although jurisdictions differ widely in defining the circumstances under which demand on directors will be excused, demand typically is deemed futile when a majority of the directors have participated in or approved the alleged wrongdoing, or are otherwise financially interested in the challenged transactions." Kamen, 500 U.S. at 101-102 (citations and quotation marks omitted). In California, courts look to the derivative law of Delaware for instruction. Bader v. Anderson, 179 Cal.App.4th 775 (2009).

The test commonly employed in determining the adequacy of the pleading of demand futility was articulated in Aronson v. Lewis, 473 A.2d 805 (Del. 1984); see Bader, 179 Cal.App.4th at 482 (citing Aronson). The Aronson court observed that "the entire question of demand futility is inextricably bound to issues of business judgment and the standards of that doctrine's applicability." Id. at 812. Aronson held that a court, in deciding whether a plaintiff will be excused from making a demand on the board, must evaluate "whether, under the particularized

-22-

facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." Id. at 814; Oakland Raiders v. NFL, 93 Cal.App.4th 572, 587 (2001) (applying the Aronson test].) "[F]utility is gauged by the circumstances existing at the commencement of a derivative suit." Aronson, 473 A.2d at 810. And the two-prong test under Aronson is disjunctive; thus, demand is excused if either prong is satisfied. Brehm v. Eisner, 746 A.2d 244, 256 (Del. 2000).

Appellant pleaded sufficient facts in the Amended Adversary Complaint, which we must accept as true under Civil Rule 12(b)(6), to establish that Debtor and his alleged co-conspirators controlled a majority of the POA Board at the time of the lease signing and at the time Appellant asserted the derivative claims in the bankruptcy court. From the allegations of the Amended Adversary Complaint, the bankruptcy court could infer that a majority of the POA Board members would favor the commercial interests represented by Debtor and would be adverse to the requests for the POA Board to prosecute an action against Debtor in either the state or bankruptcy courts. Because the Business Judgment Rule is unavailable to the POA Board when a demand is made on the board and the futility of a further demand is shown, the bankruptcy court erred in dismissing the Amended Adversary Complaint on the basis of the Business Judgment Rule.

**C. In Pari Delicto.**

Based upon the Amended Adversary Complaint, the bankruptcy court concluded, as a matter of law,, that application of the

-23-

doctrine of in pari delicto barred Appellant's claims against Debtor. We disagree.

The Supreme Court discussed the doctrine's application:

The common-law defense at issue in this case derives from the Latin, in pari delicto potior est conditio defendentis: "In a case of equal or mutual fault . . . the position of the [defending] party . . . is the better one." The defense is grounded on two premises: first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality of wrongdoing as defendants.

Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 303 (1985). The Ninth Circuit has endorsed the application of the in pari delicto doctrine in civil litigation. See Kardoh v. United States, 572 F.3d 697, 700 (9th Cir. 2009) (although a criminal case, the doctrine was applied to resolve a civil issue, that a party could not seek approval from the district court to recover fees voluntarily paid in furtherance of an illegal agreement). Application of in pari delicto is governed by state law. Hagan v. Baird (In re B&P Baird Holdings, Inc., 2015 U.S. App. LEXIS 30, at *15 (6th Cir. Jan. 2, 2015). California recognizes in pari delicto as an equitable defense in civil litigation. Mailand v. Burckle, 572 P.2d 1142, 1147 (Cal. 1978).

Traditionally, the defense was limited to situations where both parties bore "at least substantially equal responsibility" for their acts." Berner, 472 U.S. at 307; 1 J. Story, Equity Jurisprudence 399-400 (14th ed. 1918). This requirement of equal responsibility for the wrong continues in current California case law. Mountain Air Enterprises, LLC v. Sundowner Towers, LLC, 231 Cal.App.4th 805, 847 (2014) (explaining that in pari delicto

applies when parties are in "equal wrong").

Here, the bankruptcy court reasoned that, accepting the allegations of Appellant's Amended Adversary Complaint as true, the POA and the POA Board were in pari delicto with Debtor in entering into the lease, and Appellant, as the representative of the POA, could not seek relief for what amounted to the collective misconduct of Debtor and the POA Board. Again, however, this conclusion is founded upon inferences.

In dismissing it, the bankruptcy court relied upon the allegations in the Amended Adversary Complaint, which included that: (1) Debtor and his "co-conspirators" on the POA Board set up the governing documents of the POA so as to allow them to leach from the residential owners; (2) Debtor and these members of the Board acted with the express intention to damage the POA and to enrich themselves; (3) "The [POA Board] that made the decision to enter into the sign lease was elected through a flawed election that did not conform with the constitutional documents of the POA, because, in part, Debtor and his coconspirators orchestrated undisclosed changes in the voting rules . . . in order to stack the board with directors whom he and his coconspirators could control"; and (4) "The board is dominated by Debtor and his co-conspirators."

Standing alone, these allegations do not support application of the equitable doctrine. At worst, the allegations suggest that Debtor and the POA Board were possibly in pari delicto. There are no facts alleged in the Amended Adversary Complaint or otherwise appearing in the record to support the bankruptcy court's inference that the POA, as opposed to the POA Board,

participated in the alleged wrongdoing. We have located no case law that would allow the bankruptcy court to attribute the wrongdoing of a board to the corporation for purposes of a derivative action.[8] On the other hand, the well-pled facts of the Amended Adversary Complaint support an inference that the POA was a victim of the fraud and fiduciary breaches of Debtor and members of the POA Board. It was therefore error for the bankruptcy court to infer that the claims alleged in the Amended Adversary Complaint were barred by in pari delicto.

**CONCLUSION**

The bankruptcy court erred in dismissing Debtor's Amended Adversary Complaint under Civil Rules 12(b)(6) and 23.1. We therefore REVERSE the bankruptcy court's order and REMAND this matter to the bankruptcy court for further proceedings.[9]

---

[8] Indeed, we have found no published cases where a bankruptcy court has considered the in pari delicto defense in the context of a Civil Rule 23.1 or Rule 7023.1 action. However, district courts considering shareholder derivative actions under Civil Rule 23.1 have allowed the in pari delicto defense when the corporation is in equal fault with its board. Miller v. Interfirst Bank Dallas, N.A., 608 F. Supp.169, 171-72 N.D. Tex 1985) ("fault of the parties must be clearly mutual, simultaneous, and relatively equal"). Here, as discussed above, there is nothing in the record to show that the POA participated in the alleged wrongdoing by the Debtor and the POA Board.

[9] Because we reverse the dismissal order, we need not address whether the bankruptcy court erred in dismissing Appellant's Amended Adversary Complaint without leave to amend.