Filed 4/3/15  RunflatAmerica v. Malkasian CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RUNFLATAMERICA, LLC, | B248002 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC468838) |
| v. | |
| MICHAEL MALKASIAN, | |
| Defendant and Respondent. | |
| RUNFLATAMERICA, LLC, | B252766 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC468838) |
| v. | |
| MICHAEL MALKASIAN, et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of Los Angeles County, Barbara Scheper, Judge.  Affirmed.

Eagan Avenatti, Michael J. Avenatti and Scott H. Sims for Plaintiff and Appellant.

Ogden & Motley and Dale E. Motley for Defendant and Respondent Michael Malkasian.

Burke & Associates, Michael Kerry Burke, for Defendant and Respondent Tucker Taylor.

Law Offices of Martin N. Buchanan, Martin N. Buchanan, Girardi | Keese, Graham B. LippSmith and Lauren E.S. Horwitz, for Defendant and Respondent Harvey Vechery.

_____

Appellant, RunflatAmerica LLC, is a shareholder of Runflat America Corp. (RAC). Respondents Michael Malkasian and Tucker Taylor were members of RAC's board of directors when the board voted to transfer all of RAC's assets to a company owned by respondent Harvey Vechery. In these consolidated appeals, appellant challenges the dismissal of its breach of fiduciary duty claim against respondents. We conclude (1) the claim is derivative in nature and cannot be maintained without a demand on RAC's board of directors (Corp. Code, § 800); (2) respondents may raise the demand requirement as a defense; (3) appellant did not sufficiently allege that a demand on RAC's board of directors would have been futile, even after the trial court granted it leave to amend on this issue, and (4) the court did not abuse its discretion in denying further leave to amend. The judgments of dismissal are affirmed.

### FACTUAL AND PROCEDURAL SUMMARY

In September 2011, appellant's owner Rick Cole filed a complaint against Malkasian for breach of fiduciary duty and wrongful termination, alleging that Malkasian and others had conspired to remove Cole from the board of directors of RAC, a company that produced inserts for military vehicle tires. Cole alleged he was terminated as the company's president and chief executive officer (CEO), Malkasian was appointed to

2

those positions, and all RAC assets were turned over to RAC's purported creditor, American Pinnacle Fund.

In January 2012, Cole, this time joined by appellant, filed a first amended complaint against Malkasian, Taylor, and Vechery. The first amended complaint alleged that Vechery "participated in the management of RAC and served in an executive capacity." He was alleged to have engineered the appointment of Malkasian and Taylor to RAC's board of directors, the removal of Cole from all positions at RAC, and the transfer of RAC's assets to one of Vechery's companies to satisfy an allegedly unenforceable promissory note. Both Cole and appellant asserted claims for breach of fiduciary duty, and Cole alone asserted a claim for wrongful termination.

In February 2012, Malkasian demurred on the ground that Cole could not sue for breach of fiduciary duty because he was not a shareholder of RAC. Taylor and Vechery joined Malkasian's demurrer and demurred separately on the grounds that RAC was not named as a party and neither plaintiff had complied with the prerequisites for bringing a shareholder derivative claim. Shortly after that, Malkasian submitted a supplemental brief, in which he joined in Taylor and Vechery's demurrer and argued that RAC and the other directors were indispensable parties. Cole and appellant opposed, contending the action was direct, not derivative.

The court heard the demurrers in June 2012. It sustained them as to Cole's wrongful termination and breach of fiduciary duty claims. As to the latter, the court ruled Cole could not "maintain a derivative action for damages suffered by the corporation" because the first amended complaint did not allege he was a shareholder. The court overruled the demurrers as to appellant's breach of fiduciary duty claim, without addressing respondents' argument that appellant had not alleged compliance with the prerequisites for a derivative action. At the hearing, the court stated it was not persuaded that appellant had failed to join indispensable parties, but the requirement for making a pre-litigation demand on RAC's board of directors was not discussed at all. Both plaintiffs were granted 10 days to amend. No amendment was filed within that period,

3

and the case proceeded only on appellant's breach of fiduciary duty claim. In a response to an order to show cause whether the case should be related to *RunflatAmerica, LLC v. Michelin North America, Inc.* (Los Angeles County Super. Ct. No. BC477901),[1] Taylor and Vechery commented on the "apparent anomaly" in the ruling on the demurrers, but none of the parties sought a clarification of that ruling.

In November 2012, Malkasian moved for summary judgment. He argued that the first amended complaint was a shareholder derivative action, and that it failed to allege a pre-litigation demand on RAC, as well as that there was no evidence of misconduct and no damages because RAC's assets were never actually transferred to American Pinnacle Fund. Appellant opposed. It took the position that in overruling the demurrers the court had ruled the action was direct, and that even if it were derivative, the demand futility exception applied because the RAC board removed Cole as a director and CEO after he attempted to dissuade the directors from transferring all of RAC's assets to Vechery's company for no consideration.

At the hearing on Malkasian's motion, appellant's counsel argued that the court's ruling on the demurrers had misled appellant into believing its breach of fiduciary duty claim was direct, and, for that reason, it had not amended the complaint. The court disagreed, pointing out that its written decision stated the action was derivative and gave both plaintiffs leave to amend. Appellant's counsel argued in the alternative that the action was direct or that the first amended complaint sufficiently alleged "a self-interested transaction" by the RAC board, such that demand on the board would have been futile.

The court found the first amended complaint stated a derivative action but failed to allege demand futility. It declined to carve out an exception for cases in which a

___

[1] The dismissal of that derivative action against several tire companies for trade libel, intentional interference with contractual relations, and violations of the unfair competition law was affirmed on appeal in *RunflatAmerica, LLC v. Michelin North America, Inc.* (Mar. 26, 2014, B246418 & B249242 [nonpub. opn.]).

4

derivative action would benefit a defendant in complete control of a corporation. It also found the evidence did not establish that Vechery was a majority shareholder of RAC or that American Pinnacle Fund "presently controls RAC." The court granted summary judgment in favor of Malkasian and dismissed the case against him. The dismissal was appealed in case No. B248002.

Although at the hearing on Malkasian's motion appellant's counsel represented that appellant would file a motion for leave to amend, it did not. In May 2013, the court granted Taylor and Vechery's motions for judgment on the pleadings for the same reasons it had granted Malkasian's summary judgment motion, but it gave appellant leave to amend the first amended complaint to allege demand futility. Accordingly, appellant filed a second amended complaint, which included allegations that Vechery "exercised full control over all the board members of RAC in the latter half of 2010, including Malkasian and Taylor, as well as Don Mazzoni, Mitchell Lederer, and Don Mills," all of whom acted at Vechery's "express instruction" in terminating Cole; and that Vechery had a fiduciary duty to appellant because of his "management position—a position of full control over [RAC's board] by virtue of his strong business persuasion in the Los Angeles community."

The second amended complaint also alleged that a pre-litigation demand would have been futile because "the transfer of RAC's assets to Vechery's company by a Vechery controlled board for no consideration was a self-interested transaction," not subject to the business judgment rule. Appellant referenced "the November 19, 2010 Board minutes" as supporting the claim that the board "transferred all of the assets of RAC to Vechery's company under the guise of satisfying an alleged $100,000 promissory note between RAC and the company that had a maturity date of February 9, 2005 (i.e., well over five years prior to the actual asset transfer). However, as of the date of transfer, the promissory note had already been satisfied and/or the legal ability of Vechery's company to collect on the note had long passed."

5

The board minutes were attached to the complaint. They stated that "[t]he board received reports concerning the corporation's financial status, and considered the report of Rick Cole . . . of the following: that the corporation was insolvent; that the corporation could not pay its debts or obligations, including its current corporate lease; that the corporation should be dissolved or wound down due to insolvency; and that the corporation needed to arrange for the transfer of its assets to its secured creditor, American Pinnacle Fund immediately." The board terminated Cole as RAC's CEO, authorized Malkasian to transfer all RAC assets to American Pinnacle Fund to give effect to an October 8, 2010 resolution, and resolved that the corporation should retain counsel and submit a wind down plan to shareholder approval.

RAC was named as a defendant in the body of the second amended complaint but not in the caption. Appellant served RAC's agent for service of process and sought an entry of default after RAC failed to appear. The court refused to enter default because RAC had not been substituted as a Doe defendant in the caption. It later ruled that naming RAC as a defendant in the body of the second amended complaint was unauthorized since leave to do so "was neither requested nor granted," and it denied as untimely appellant's motion for leave to file a third amended complaint to substitute RAC in as a Doe defendant.

In October 2013, the court granted Vechery's motion for judgment on the pleadings and sustained Taylor's demurrer to the second amended complaint on the ground that appellant had failed to allege demand futility with sufficient particularity. It explained that the second amended complaint made only conclusory allegations, did not state how many directors were on the board, and failed to allege that all were conflicted. The court alternatively ruled RAC was an indispensable party of whose existence appellant had been aware since the inception of the case; it therefore could not be named as a Doe defendant. In its opposition, appellant sought leave to amend solely in order to add RAC. At the hearing, appellant's counsel requested one more opportunity to amend, representing that amendment was possible without providing any detail. The court

6

responded that it already had granted leave to amend to allege demand futility and "assume[d] that you . . . made your best effort in the second amended complaint and it's woefully insufficient." The court granted Taylor and Vechery's oral motion to dismiss. The dismissal was appealed in case No. B252766.

We consolidated the two appeals for oral argument and decision. In October 2014, appellant requested that we take judicial notice of RAC's suspension by the California Franchise Tax Board. We vacated submission and requested supplemental briefing on whether the appeal should be dismissed due to RAC's suspension, and whether appellant was required to allege demand futility based on the composition of RAC's board at the time its derivative action was filed.

## DISCUSSION

### I

A demurrer and a motion for judgment on the pleadings test the legal sufficiency of the factual allegations in the complaint and are subject to de novo review. (*Kapsimallis v. Allstate Ins. Co.* (2002) 104 Cal.App.4th 667, 672.) A motion for summary judgment used to test the sufficiency of a complaint has the legal effect of a demurrer or motion for judgment on the pleadings. (*American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1118.) We review the court's ruling, rather than its reasoning, and will affirm the decision if it is correct on any theory. (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1034 (*Berg*).) We deem true all properly pleaded, material facts in the complaint, but not "contentions, deductions, or conclusions of fact or law." (*Kapsimallis v. Allstate Ins. Co.*, at p. 672.) We consider judicially noticeable facts, admissions by the plaintiff, and exhibits attached to the complaint that contradict its allegations and bear on its truthfulness. (*Sarale v. Pacific Gas & Electric Co.* (2010) 189 Cal.App.4th 225, 244–245; *Bounds v. Superior Court* (2014) 229 Cal.App.4th 468, 477; *Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 605.)

7

## A. *Derivative v. Direct Shareholder Action*

The parties disagree whether the breach of fiduciary duty claim is direct or derivative. "Under California law, 'a shareholder *cannot* bring a direct action for damages against management on the theory their alleged wrongdoing decreased the value of his or her stock (e.g., by reducing corporate assets and net worth). The corporation itself must bring such an action, or a derivative suit may be brought on the corporation's behalf.' [Citations.] A different rule would 'authorize multitudinous litigation and ignore the corporate entity.' [Citation.]" (*Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 312.)

"An action is derivative if "'the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets."'" [Citation.] Shareholders may bring a derivative suit to, for example, enjoin or recover damages for breaches of fiduciary duty directors and officers owe the corporation. [Citation.] An individual cause of action exists only if damages to the shareholders were not *incidental* to damages to the corporation. [Citation.] Examples of direct shareholder actions include suits brought to compel the declaration of a dividend, or the payment of lawfully declared or mandatory dividends, or to enjoin a threatened ultra vires act or enforce shareholder voting rights. [Citation.]" (*Schuster v. Gardner*, *supra*, 127 Cal.App.4th at p. 313.)

Appellant assumes that, in overruling respondents' demurrers to its breach of fiduciary duty claim in the first amended complaint, the court necessarily concluded the claim was direct. The assumption is belied by the court's decision, which describes the claim as derivative. Appellant's contention that the court is bound by its initial ruling on the demurrers to the first amended complaint also is incorrect. The court may reconsider its rulings at any time before entry of judgment. (*Kerns v. CSE Ins. Group* (2003) 106 Cal.App.4th 368, 388.)

The gravamen of both the first and second amended complaint is that respondents' breach of fiduciary duty led to mismanagement and dissipation of RAC's assets. Although that claim is derivative in nature, appellant relies on an exception to shareholder derivative actions recognized by some jurisdictions, primarily in the context of closely held corporations.[2] (See, e.g., *Thomas v. Dickson* (Ga. 1983) 301 S.E.2d 49, 50–51 [allowing direct action by wife of deceased minority shareholder to recover unpaid dividends that other two shareholders had distributed to themselves as bonuses].) As appellant acknowledges, the application of this exception is not uniform, and California courts have not adopted it. In *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 127, the court rejected an argument similar to the one appellant makes here—that a derivative action is "nonsensical" if the wrongdoer would share in the award of damages. The court reasoned that a derivative action is an action in equity and a court of equity may distribute damages so as to achieve an equitable result. (*Ibid*.)

A majority of the jurisdictions that have considered the exception on which appellant relies have rejected it because the established distinction between direct and derivative actions ensures predictability in commercial transactions, and derivative actions protect creditors and the corporate entity. (See generally Cooper et al., *supra*, 9 U.C. Davis Bus. L.J. at pp. 182–188.) The minority approach is typically justified by the inapplicability of the policy reasons favoring derivative actions in the case of closely held corporations. (*Id*. at pp. 188–191.)

Applying a similar analysis, in *Jara v. Suprema Meats, Inc.* (2004) 121 Cal.App.4th 1238, the court reasoned that the three primary considerations favoring derivative actions—avoidance of multiple shareholder actions, encouraging the intracorporate resolution of disputes, and preserving corporate assets for the benefit of

---

[2] "Closely held corporations are corporations with few shareholders, where management and ownership are often united, and where a lack of ready market for the shares exists." (Cooper, et al., *Too Close for Comfort: Application of Shareholder's Derivative Actions to Disputes Involving Closely Held Corporations* (2009) 9 U.C. Davis Bus. L.J. 171, 174 (hereafter Cooper, et al.).)

creditors—were inapplicable in the case of a minority shareholder alleging a direct action for breach of fiduciary duty against the corporation's other two shareholders, who paid each other excessive compensation without the plaintiff's approval. Since the plaintiff was the only minority shareholder in the closely held corporation, there was no danger of "a multiplicity of lawsuits." (*Id*. at p. 1259.) There also was no reason to favor "intracorporate resolution of disputes and protecting managerial freedom" because "the defendants constitute[d] the entire complement of the board of directors and all the corporate officers." (*Ibid*.) And there was no need to preserve corporate assets for creditors because the corporation's business was unaffected. (*Ibid*.)

There are several reasons not to apply the direct action exception in this case. The pleadings do not allege RAC was a closely held corporation, and it is doubtful such an allegation can be made in good faith.[3] Evidence appellant submitted in opposition to Malkasian's summary judgment motion indicates RAC had several dozen shareholders, but none of the five directors identified in the second amended complaint was a shareholder. Moreover, appellant does not, and apparently cannot, allege that it was a minority shareholder, or that Vechery's company was RAC's majority shareholder. Because this is not a case of a minority shareholder of a closely held corporation asserting an individual claim, the policy considerations favoring a derivative shareholder action based on the directors' alleged breach of fiduciary duty apply.

### B. The Effect of RAC's Suspension

Appellant asked us to take judicial notice that the California Secretary of State website showed RAC's status as "FTB suspended." It is unclear when the suspension took place. Since the action is derivative, we asked the parties whether the appeal must be dismissed in light of RAC's suspension. After considering their supplemental briefs, we conclude that a dismissal is not required.

---

[3] Under Corporations Code section 158, a close corporation's articles must identify it as such and must provide that its shares cannot be held by more than 35 persons.

A corporation whose powers have been suspended for nonpayment of the corporate franchise tax lacks capacity to prosecute or defend an action, or to appeal from an adverse judgment. (Rev. & Tax. Code, § 23301; *Bourhis v. Lord* (2013) 56 Cal.4th 320, 324.) The purpose of this rule is to enhance tax collections, and a suspended corporation may validate actions taken during the suspension by paying the taxes and obtaining a revival of its powers. (*Peacock Hill Assn. v. Peacock Lagoon Constr. Co.* (1972) 8 Cal.3d 369, 371.) Lack of capacity to sue is not a jurisdictional matter. (*Traub Co. v. Coffee Break Service, Inc.* (1967) 66 Cal.2d 368, 371.) Rather, it gives rise to a plea in abatement that may be waived if not raised at the earliest opportunity. (*Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1604.) Courts have discretion to allow the corporation to pay the tax and obtain a certificate of revival. (*Cadle Co. v. World Wide Hospitality Furniture, Inc.* (2006) 144 Cal.App.4th 504, 511–514.)

In *Reed v. Norman* (1957) 48 Cal.2d 338, a shareholder appealing an adverse judgment in a derivative action on behalf of a suspended corporation claimed the corporate books and records necessary to compute the taxes were in the hands of the mismanaging corporate officials. The court acknowledged that Revenue and Taxation Code section 23301 was a bar in a derivative action on behalf of a suspended corporation, but concluded it would be inequitable to allow the statute to "stand as a shield for protecting allegedly dishonest corporate officials." (*Reed v. Norman*, at p. 343.) Alternatively, the court noted that although the corporation had been suspended for several years, the defendants had delayed filing a motion to dismiss, and even assuming the plaintiff could not maintain the action, he should have an opportunity to pay the back taxes and revive the corporation, as allowed by Revenue and Taxation Code section 23305. (*Id.* at p. 344.)

Respondents argue the equitable exception in *Reed v. Norman*, *supra*, 48 Cal.2d 338, should not apply in this case because they have not moved to have the appeal dismissed, and therefore have not attempted to use RAC's suspension as a shield. Taking respondents at their word leads to the conclusion that they have waived the defense of

11

incapacity because they failed to raise it at their earliest opportunity—in a motion to dismiss following appellant's request for judicial notice. (*Color-Vue, Inc. v. Abrams*, *supra*, 44 Cal.App.4th at p. 1604.) Dismissing the appeal on the court's own motion would nevertheless allow Revenue and Taxation Code section 23301 "to stand as a shield," protecting them from liability. (*Reed v. Norman*, at p. 343.)

Respondents rely on an out-of-state case, *Price v. Upper Chesapeake Health Ventures, Inc.* (Md. Ct. App. 2010) 995 A.2d 1054, to argue that the equitable exception in *Reed v. Norman*, *supra*, 48 Cal.2d 338, should not apply in the absence of an intentional failure to pay taxes. Foreign decisions decided under similar statutes and similar factual situations may be persuasive in the absence of California authority on point. (*Estate of Salisbury* (1978) 76 Cal.App.3d 635, 642.) That is not the case where, as here, the foreign court distinguished existing California authority. The Maryland court noted specifically that *Reed v. Norman* "did not include any language limiting its exception to cases where there is evidence that the corporate directors failed to file or pay taxes in order to avoid liability," and that it allowed the shareholder to revive the corporation, as permitted by California law (Rev. & Tax. Code, § 23305). (*Price,* at p. 1067 & fn. 18, citing *Reed v. Norman*, at p. 344.) We are bound to follow the decision of our state Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Having found no controlling authority requiring the dismissal of the appeal, we proceed to dispose of it on the merits.

C. *Respondents' Standing to Raise the Demand Requirement*

Appellant argues respondents lack standing to challenge its compliance with Corporations Code section 800, subdivision(b)(2), which requires a plaintiff to plead "with particularity" the attempts that were made to secure board action before bringing suit, or, alternatively, the factual basis upon which the plaintiff believes that a demand on the board would have been futile. (*Bader v. Anderson* (2009) 179 Cal.App.4th 775, 782 (*Bader*).)

12

Appellant cites *Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995 for the proposition that "[t]he shareholder plaintiff's 'lack of standing . . . to sue derivatively for . . . failure on [its] part to make a demand upon the board of directors' are defenses 'peculiar to the corporation alone, and may be properly raised only by the nominal defendant who, for purposes of those matters, ceases to be a nominal defendant and becomes an actual party defendant.'" (*Id.* at p. 1006, quoting *Swenson v. Thibaut* (1978) 39 N.C.App. 77 [250 S.E.2d 279, 294].) The issue before the *Patrick* court was whether a corporation may demur to a derivative action brought for its benefit. The court concluded a demurrer was proper only as to the shareholder's lack of standing. (*Patrick*, at p. 1008.) In doing so, the *Patrick* court cited, without discussing, the principle that in derivative actions "the proper party to invoke a given defense should be the party whom the defense is designed to protect." (*Patrick*, at p. 1006, quoting Note, *Defenses in Shareholders' Derivative Suits—Who May Raise Them* (1952) 66 Harv. L.Rev. 342, 343.) It also cited, again without discussing, *Swenson*'s assumption that a shareholder's failure to make a demand on the board of directors is a defense that may only be raised by the corporation. (*Patrick*, at p. 1006; *Swenson*, at p. 294.)

The assumption that the demand requirement protects only the corporation is incorrect. (See, e.g., *Markowitz v. Brody* (S.D.N.Y. 1981) 90 F.R.D. 542, 562 [defense of failure to plead demand or futility under Fed. Rules Civ. Proc., rule 23.1, 28 U.S.C., is intended to benefit not only corporation, but also corporate directors].) In *Kaplan v. Peat, Marwick, Mitchell & Co.* (Del. 1988) 540 A.2d 726, the Delaware Supreme Court reasoned that a third-party defendant's standing to raise the demand requirement must be determined based on its nature and purpose. (*Id.* at p. 730.) The court explained that "[t]he purpose of pre-suit demand is to assure that the stockholder affords the corporation the opportunity to address an alleged wrong without litigation and to control any litigation which does occur." (*Ibid.*) It concluded that third-party defendants may challenge the sufficiency of a shareholder's demand. (*Ibid.*; cf. *Simmonds v. Credit Suisse Securities (USA) LLC* (9th Cir. 2010) 638 F.3d 1072, 1097, fn. 22, vacated on

13

other grounds in *Credit Suisse Securities (USA) LLC v. Simmonds* (2012) ___ U.S. ___ [132 S.Ct. 1414] [holding third parties may raise demand requirement under section 16(b) of Securities Exchange Act of 1934 (15 U.S.C. § 78p(b))]; *Shlensky v. Dorsey* (3d Cir. 1978) 574 F.2d 131, 142 ["defendants other than the corporation whose rights the shareholder plaintiffs are seeking to vindicate may successfully raise the defense of failure to comply with [the demand requirement]"].)

California courts apply Delaware law on the issue of demand futility. (See *Bader v. Anderson*, *supra*, 179 Cal.App.4th at p. 791, fn.5; *Oakland Raiders v. National Football League* (2001) 93 Cal.App.4th 572, 586, fn. 5.) They also recognize that the demand requirement protects "the managerial role of directors" and aims "to curb potential abuse." (See, e.g., *Bader*, at p. 782.) Thus, it cannot be said that directors are not protected by the demand requirement under California law, or that the purpose of the requirement would not be served if defendants other than the corporation were allowed to raise it as a defense. We decline to adopt the restrictive approach to respondents' standing that appellant suggests.

### D. Demand Futility

Appellant argues that RAC's absence should be interpreted as non-opposition and acquiescence to the action. Its reliance on *Kaplan v. Peat, Marwick, Mitchell & Co.*, *supra*, 540 A.2d 726 for this argument is misplaced. In that case, the court excused the plaintiff's failure to make a demand on a corporation that had been joined as a nominal defendant and had declared its position of neutrality on a motion to dismiss the lawsuit. (*Id*. at p. 731.) It held "that when a corporation chooses to take a position in regards to a derivative action asserted on its behalf, it must affirmatively object to or support the continuation of the litigation," and that a declared "position of neutrality must be viewed as tacit approval for the continuation of the litigation." (*Ibid*.) It would be speculative to characterize RAC's failure to appear in this case as a declared "position of neutrality" or a sign of acquiescence, and we see no reason to excuse the demand requirement on that basis.

Appellant also argues that the first and second amended complaint sufficiently alleged that a demand on RAC's board of directors would have been futile because the board was not disinterested. A plaintiff in a derivative action must allege "with particularity" its efforts to secure board action, "or the reasons for not making such effort." (Corp. Code, § 800, subd. (b)(2); *Bader v. Anderson*, *supra*, 179 Cal.App.4th at p. 790.) Futility is sufficiently pled if the allegations create "'a reasonable doubt . . . that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.'" (*Id.*, at p. 791, quoting *Aronson v. Lewis* (Del. 1984) 473 A.2d 805, 814 (*Aronson*), overruled on other grounds in *Brehm v. Eisner* (Del. 2000) 746 A.2d 244, 253–254.) The test is "disjunctive; accordingly, there is demand excusal if either prong is satisfied." (*Bader*, at p. 791, citing *Brehm*, at p. 256.)

As to the first prong, "general, conclusory facts are insufficient" to raise doubts about the directors' independence and disinterestedness. (*Oakland Raiders v. National Football League*, *supra*, 93 Cal.App.4th at p. 587.) "The proof must be of 'facts specific to each director from which [the trier of fact] can [find a reasonable doubt] that that particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff.' [Citation.]" (*Ibid*.) "Where the claim is that specified directors lack independence because they are dominated by a controlling shareholder, the general allegation that the controlling shareholder "'personally selected"' the directors is insufficient. [Citation.] Rather, in addition to alleging control, the plaintiff is required to present specific facts showing 'that through personal or other relationships the directors are beholden to the controlling person. [Citation.]' [Citations.] And in this context, simple allegations, of themselves, that a director has a personal friendship or outside business relationship with the controlling person will not suffice to cast a reasonable doubt as to the director's independence. [Citation.]" (*Bader*, *supra*, 179 Cal.App.4th at p. 792.) The plaintiff must allege a relationship between a controlling person and director so substantial that the "'non-interested director would be more willing to risk his or her

15

reputation than risk the relationship with the interested director . . . .'" (*Ibid.*, citing *Beam v. Stewart* (Del. 2004) 845 A.2d 1040, 1052 (*Beam*).)

Appellant's allegations that Vechery managed RAC and controlled RAC's board are conclusory and nonspecific. Neither the first nor the second amended complaint offers particularized facts as to Vechery's involvement in RAC's day-to-day activities or his relationship with the individual directors. (*Bader*, *supra*, 179 Cal.App.4th at pp. 798–799.) At best, the second amended complaint suggests that Vechery's control was due to his position of prominence in the Los Angeles business community. Such a general allegation is insufficient. (See *Beam*, *supra*, 845 A.2d at pp. 1051–1052 [allegations that majority shareholder and other directors moved in the same social circles, and developed business relationships and friendships were insufficient to rebut presumption of independence].) The suggestion that Vechery engineered the appointment of Malkasian and Taylor to the board also is insufficient. (See *Aronson*, *supra*, 473 A.2d at pp. 814–816 [allegation that director owning 47 percent of corporation's stock "personally selected" each corporate director did not support claim that directors lacked independence].) These allegations do not permit a determination of independence or disinterest "on a director-by-director basis." (*Bader*, at p. 790.)

Under the second prong, the allegations must establish that the "'challenged transaction was [not] otherwise the product of a valid exercise of business judgment.'" (*Bader*, *supra*, 179 Cal.App.4th at p. 791; *Aronson*, *supra*, 473 A.2d at p. 814.) The business judgment rule "establishes a presumption that directors' decisions are based on sound business judgment, and it prohibits courts from interfering in business decisions made by the directors in good faith and in the absence of a conflict of interest. [Citations.]" (*Berg*, *supra*, 178 Cal.App.4th at p. 1045.) "In most cases, 'the presumption created by the business judgment rule can be rebutted only by affirmative allegations of facts which, if proven, would establish fraud, bad faith, overreaching or an unreasonable failure to investigate material facts. [Citation.]'" (*Id*. at p. 1046.)

16

Appellant's main contention is that a demand on the board would have been futile because of its decision to transfer RAC's assets to American Pinnacle Fund, Vechery's company, in satisfaction of a promissory note that was either satisfied or uncollectable. This allegation is expressly based on the November 19, 2010 board minutes attached to the second amended complaint, but the minutes indicate the board relied on financial reports, including a report by Cole, regarding RAC's insolvency and the need to assign its assets to "its secured creditor, American Pinnacle Fund." The minutes also indicate the board gave effect to a prior resolution regarding the transfer of assets.

To the extent the board minutes are inconsistent with the allegations in the complaint, we may accept the minutes as true. (*SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 83 [when exhibits attached to complaint conflict with allegations, we may accept as true contents of exhibits].) Directors are entitled to rely on competent financial reports prepared by officers of the corporation. (*Bader*, *supra*, 179 Cal.App.4th at p. 788, citing Corp. Code, §309.) The minutes do not show, and appellant does not allege with any particularity, that the reports presented at the November 19, 2010 meeting placed the directors on actual or inquiry notice that the debt to American Pinnacle Fund was based on a note that was either satisfied or uncollectable. The operative complaint does not contain any allegations regarding the resolution to transfer assets adopted at the October 8, 2010 meeting; it does not name all members of the RAC board in 2010, nor does it identify the directors who voted for that resolution.

Appellant alleges no facts in support of its conclusory allegation that the promissory note was satisfied, and the note itself is not attached to the pleadings, nor is its language quoted in full. "Where a complaint is based on a written contract which it sets out in full, a general demurrer to the complaint admits not only the contents of the instrument but also any pleaded meaning to which the instrument is reasonably susceptible. [Citation.]" (*Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 239.) We must accept the plaintiff's interpretation of the contract in those circumstances unless it is "clearly erroneous." (*Ibid.*) Without access to the full

17

text of the note, it is impossible to accept at face value appellant's essentially legal conclusion that the note was unenforceable because it had matured more than five years earlier. (Civ. Code, § 1641 ["The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other"].) In any event, its conclusion about the enforceability of the note appears to be clearly erroneous as it is based on the general four-year statute of limitations for contract actions (Code Civ. Proc., § 337, subd. 1.), as opposed to the six-year statute of limitation for enforcing a promissory note payable at a definite time (Com. Code, § 3118, subd. (a)). (See *Cadle Co. v. World Wide Hospitality Furniture, Inc*., *supra*, 144 Cal.App.4th at p. 514, fn. 8.)

Alternatively, appellant argues that the resolution to assign all RAC assets to one creditor was not protected by the business judgment rule because it was a prohibited preferential treatment of that creditor, in violation of the trust-fund doctrine, which imposes on the directors of an insolvent corporation a duty not to "divert, dissipate, or unduly risk corporate assets that might otherwise be used to pay creditors claims." (*Berg*, *supra*, 178 Cal.App.4th at p. 1041.) Respondents contend that the trust-fund doctrine does not apply in this case because appellant is not a creditor of RAC. That contention is not well taken because the directors' duty to preserve the assets of an insolvent corporation is coextensive with their duties to the corporation. (See *Berg*, at pp. 1039, 1041, italics omitted.)

However, neither the first, nor the second amended complaint alleges with any particularity that RAC had other creditors besides American Pinnacle Fund or that the directors knew or should have known of their existence, so as to support an inference of a knowing or grossly negligent violation of the trust-fund doctrine. (See *Katz v. Chevron* Corp. (1994) 22 Cal.App.4th 1352, 1366, quoting *Aronson*, *supra*, 473 A.2d at p. 812 ["under the business judgment rule[,] director liability is predicated upon concepts of gross negligence"].) To the extent the board's resolution attached to the second amended complaint suggests the directors knew RAC "could not pay . . . its current corporate

18

lease," it is unclear whether RAC already had defaulted on the lease. In any event, "leases" are included in the assets Malkasian was authorized to collect and transfer to American Pinnacle Fund. Cole appears to have mentioned the existence of a balance on a corporate credit card for the first time in e-mail correspondence with Malkasian in mid-December 2010, after the November 2010 board meeting. That correspondence, which is attached to the second amended complaint, suggests the information had not been included in the reports the board reviewed at the meeting, and there is no allegation why the board should nevertheless have been on inquiry notice regarding the omitted information.

Appellant's pleadings are insufficient for yet another reason. Demand futility "is gauged by the circumstances existing at the commencement of a derivative suit." (*Bader*, *supra*, 179 Cal.App.4th at p. 791, quoting *Aronson*, *supra*, 473 A.2d at p. 810.) If a majority of the board members have been replaced by the time the lawsuit is filed, the question is whether the reconstituted board would impartially consider the merits when presented with a shareholder demand for action. (*Bader*, at pp. 791–792, citing *Rales v. Blasband* (Del. 1993) 634 A.2d 927, 934.) In his demurrer to the second amended complaint, Taylor noted the lack of any allegation as to the board's composition at the time Cole filed his original complaint. Indeed, the second amended complaint alleges that at the time Cole sued Malkasian in September 2011 he thought a demand on the board would have been futile because in December 2010 Malkasian had warned him "not to interfere" with RAC's operation. That allegation is irrelevant. Cole did not and could not bring a derivative action because he was not a shareholder of RAC. Moreover, in its opposition to Malkasian's summary judgment motion, appellant admitted it was undisputed that Malkasian had resigned from the board in January 2011.

Appellant's derivative action did not commence until the first amended complaint was filed in January 2012. Yet, there are no allegations regarding the composition of the board at that time, or at any time after 2010. Rather, appellant appears to tacitly assume that all board members, including Malkasian, remained on the board. That assumption is

unreasonable in light of Malkasian's undisputed resignation a year before the derivative action was filed. Absent a specific allegation about the board's composition in January 2012, we cannot reasonably infer that the board membership remained substantially unchanged. Appellant claims to have sufficiently alleged that Vechery and American Pinnacle Fund controlled the board at all times. But the second amended complaint alleges only that Vechery "exercised full control over all of the board members of RAC in the latter half of 2010." There are no specific factual allegations regarding actual control of RAC by American Pinnacle Fund, and in ruling on Malkasian's summary judgment motion, the court found no evidence of such control.

Because appellant has not alleged with particularity that demand on the RAC board would have been futile at the time its derivative action commenced, it lacks standing to pursue that action.

## II

Appellant argues the trial court abused its discretion in denying leave to amend at various points during the proceeding. As a general rule, leave to amend is liberally allowed at all stages of a proceeding if there is a reasonable possibility that a defect in a complaint may be cured by amendment. (*Kempton v. City of Los Angeles* (2008) 165 Cal.App.4th 1344, 1347–1348; *Edwards v. Superior Court* (2001) 93 Cal.App.4th 172, 180.) "'The burden of proving such reasonable possibility is squarely on the plaintiff.'" (*Maxton v. Western States Metals* (2012) 203 Cal.App.4th 81, 95.) Despite the general rule of liberality, appellate courts are less likely to find an abuse of discretion where a proposed amendment was offered after an unwarranted delay or lack of diligence. (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175.)

*A. Leave to Amend the First Amended Complaint*

In case No. B248002, appellant argues the court should have granted leave to amend when it treated Malkasian's motion for summary judgment as a motion for judgment on the pleadings. In order to oppose a summary judgment motion on issues not encompassed in the operative complaint, a plaintiff typically must seek leave to amend

the complaint at or prior to the hearing on the motion. (*Schweitzer v. Westminster Investments, Inc.* (2007) 157 Cal.App.4th 1195, 1214.) If the summary judgment motion is in essence a motion for judgment on the pleadings, a request to amend may be made at the hearing or before the entry of judgment. (*Kirby v. Albert D. Seeno Construction Co.* (1992) 11 Cal.App.4th 1059, 1069.)

Malkasian's summary judgment motion was supported by evidence, but the court made very limited factual findings. To the extent it granted the motion because the first amended complaint did not allege demand futility, it treated the motion as one on the pleadings. But the record does not show that appellant requested leave to amend either at the hearing or before the court entered judgment for Malkasian. At the hearing, appellant's counsel represented that appellant would have amended earlier had it not been misled by the court's overruling of the demurrers to its first amended complaint. The court explained appellant already had been granted leave to amend and could have amended. Appellant's counsel also represented that appellant would soon file a motion for leave to amend to allege demand futility, but no such motion was filed.

As a general rule, where a previous demurrer that should have alerted the plaintiff to a deficiency in the pleading has been overruled, it would be unfair to deny the plaintiff an opportunity to amend if the court changes its mind and grants a motion for judgment on the pleadings on the same issue. (*Higgins v. Del Faro* (1981) 123 Cal.App. 3d 558, 566.) But appellant's argument that it was misled by the court's overruling of the demurrers to the first amended complaint is less convincing because the court's decision was apparently incomplete and internally inconsistent. The court ruled only on the issue of standing to bring a derivative action, and did not address the demand requirement or demand futility either in its tentative decision or on the record. In addition, the court granted leave to amend to both plaintiffs even though it sustained the demurrers only as to Cole's claims. Appellant took a risk when it relied on the court's decision without seeking clarification. Its continued assumption that the breach of fiduciary duty claim was direct when the court expressly stated it was derivative was particularly unwarranted.

21

In any event, appellant was allowed to file a second amended complaint after the court sustained Taylor and Vechery's motion for judgment on the pleadings. As we explained, the twice amended pleading still failed to allege demand futility with sufficient particularity. We may not reverse a trial court's rulings unless they were prejudicial and resulted in a miscarriage of justice. (See Cal. Const., art. VI, § 13.) Thus, even were we to agree that the court erred in not allowing appellant to amend as a matter of right when it treated Malkasian's motion as a motion for judgment on the pleadings, the error is harmless in light of the insufficient subsequent amendment.

B. *Leave to Amend the Second Amended Complaint*

In case No. B252766, appellant proceeds on the assumption that the second amended complaint was its first real opportunity to allege demand futility, and the court abused its discretion in not allowing further amendment of that complaint. As we already explained, the record belies that assumption. Although respondents had argued from the beginning that the breach of fiduciary duty claim was derivative and the court's decision on the demurrers to the first amended complaint described it as such, for the majority of the proceedings in the trial court appellant insisted the claim was direct. By the time the second amended complaint was filed in May 2013, appellant's claim had been pending for 16 months, and appellant had missed at least two opportunities to seek leave to allege demand futility. It cannot claim prejudice when the delay in amendment was at least in part attributable to its own choices. (See *Telles Transport, Inc. v. Workers' Comp. Appeals Bd.* (2001) 92 Cal.App.4th 1159, 1167 [party may not claim prejudice where error caused by its conduct or by failing to take reasonable steps to avoid or correct it]; *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1387 [amendment liberally allowed where the pleader did not have ""'"a fair prior opportunity to correct the substantive defect"'""].)

Nor has appellant met its burden of showing a reasonable possibility of amending to allege demand futility. It made no such showing in its oppositions to and at the combined hearing on Taylor's demurrer to the second amended complaint and Vechery's

22

motion for judgment on the pleadings. In its opening brief on appeal, appellant represented that it can allege "facts sufficient to demonstrate that it was not a valid exercise of business judgment for any of RAC's Board of Directors to liquidate all of RAC's assets for no consideration," and that it can "plead specific allegations demonstrating that none of the individual board members of RAC was disinterested, nor did they independently determine that APF should receive all of RAC's assets over and above legitimate, existing creditors of RAC which ended up receiving nothing in return for their claims." These conclusory statements do not make clear what specific facts appellant proposes to allege to fulfill the requirement of pleading demand futility "with particularity." (Corp. Code, § 800, subd. (b)(2).)

At oral argument, for the first time, appellant's counsel referred us to "Cole's declaration," without specifying where that declaration appears in the record or the facts contained in it. In the absence of adequate citations to the record, we are not required to search it in order to support an appellant's contentions. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) While the showing of a reasonable possibility of amendment may be made for the first time on appeal (*Dudley v. Department of Transportation* (2001) 90 Cal.App.4th 255, 260), there is no reasonable explanation why the second amended complaint could not have been drafted to allege facts within Cole's own knowledge, on which appellant had relied in its opposition to Malkasian's summary judgment motion.

Even were we to consider the evidence appellant offered in opposition to the summary judgment motion, we would find appellant's showing on appeal to be insufficient. Cole's declaration states he "attempted to dissuade" the board from transferring RAC's assets to Vechery's company for no consideration because the promissory note had matured in 2005, to which the board responded by removing him as CEO. The declaration does not state that the board agreed with Cole's interpretation of the promissory note and proceeded with the asset transfer anyway. If, as we explained earlier, Cole was relying on the wrong statute of limitation, then the board's disagreement

23

with his interpretation cannot evidence bad faith.[4]  The declaration mentions no other creditor claims, stating only that RAC has not been able to "provide anything of value to its shareholders."  There is no indication Cole alerted the board, either in October or November 2010, that the transfer of assets to American Pinnacle Fund may be a preferential treatment of that creditor.

Although Taylor's demurrer to the second amended complaint pointed to the lack of an allegation about the board's composition at the time Cole filed his lawsuit, appellant did not address the issue of the board's composition until we requested supplemental briefing.   Even then, appellant proceeded on the assumption that the board remained substantially the same, without offering any particularized facts regarding its composition at any time after 2010.  Instead, it offered additional facts about events that took place in 2010, and emphasized the corporation's failure to file for bankruptcy or wind down.  The allegation in the second amended complaint that Malkasian was authorized to wind it down, coupled with Malkasian's resignation from the board two months later, begs the question who was to wind down the corporation after his departure.[5]

In its supplemental briefing, appellant relies on RAC's suspension to argue that a demand on the board of a suspended corporation is necessarily futile.  The argument is

---

[4] The promissory note, which is attached to Cole's declaration, contains a provision waiving the obligee's "diligence in taking any action to collect any sums owing under" it.  That provision further undercuts Cole's interpretation of the note as uncollectable due to mere passage of time.

[5] We note that at oral argument and in his supplemental brief, Taylor's counsel represented that his client and other board members had resigned by the time the derivative action commenced.  Appellant's counsel did not address these representations, which, if true, would raise questions about the good faith of appellant's continued reliance on the assumption that RAC's board remained substantially unchanged.  From the record and the parties' representations, it is impossible to determine with any confidence whether appellant can amend to allege in good faith that RAC had an active board after 2010 and that its composition remained substantially unchanged.

flawed.  Initially, appellant misreads *Braddock v. Zimmerman* (Del. Supr. 2006) 906 A.2d 776 as generally allowing a reassessment of the demand requirement in derivative actions "as of the date of the filing of an *amended complaint*," and assumes that the case allows it to file an amendment based on current facts.  The court in *Braddock* considered the application of the demand requirement to cases in which an independent board is elected during the pendency of a derivative action.  (*Id.* at p. 785.)  The court held that where "a plaintiff's complaint has been dismissed and the plaintiff is given leave to file an amended complaint, . . . the plaintiff must make a demand on the board of directors in place at [the] time the amended complaint is filed or demonstrate that demand is legally excused as to that board."  (*Id.* at p. 786.)  Since appellant proceeds on the assumption that the RAC board has not changed, and the only indication is that, if the board changed, the change occurred before the filing of the derivative action, *Braddock* is inapposite.

Furthermore, appellant's attempt to use the corporation's suspension to excuse the demand requirement is unsupported by California authority.  It is based on an old out-of-state case, *Favorite Oil Co. of Beaumont & Cleburne v. Jef. Chaison Townsite Co.* (Tex.Civ.App. 1913) 162 S.W. 423, which held that demand on the board of a "defunct" corporation would be futile because the corporation could not sue or be sued.  (*Id.* at pp. 423, 425.)  Appellant fails to appreciate that the case was decided under a statutory scheme limiting the period for reviving such a corporation to six months.  (*Ibid.*)  As we already have explained, California law encourages the payment of taxes and revival of suspended corporations, and allows a shareholder in a derivative action to revive a corporation that has been suspended for years.  (*Reed v. Norman*, *supra*, 48 Cal.2d at p. 344.)  If corporate officials may not use the suspension as a shield (*ibid.*), a shareholder should not be allowed to use it as a sword.  Such a use would be equally inequitable, as well as contrary to the letter and spirit of Revenue and Taxation Code sections 23301 and 23305.

C.  *Leave to Join RAC*

In case No. B252766, appellant also challenges the court's conclusion that the

25

joinder of RAC in the second amended complaint was unauthorized and its denial of appellant's subsequent requests for leave to join RAC as a nominal defendant.  Since we conclude that appellant is not entitled to further leave to amend to allege demand futility, we need not address the court's rulings on the joinder issue.

**DISPOSITION**

The judgments of dismissal are affirmed.  Respondents are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                                    EPSTEIN, P. J.
We concur:


        WILLHITE, J.


        COLLINS, J.


26